JOSEPH P. O'CONNELL & others *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY & another.

Suffolk.    November 30, 1904. — January 6, 1905.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Insurance*, Against liability. *Waiver. Contract*, Condition precedent. *Equity Jurisdiction*, To enforce contract of indemnity.

Even if a company insuring against liability for bodily injuries caused by the negligence of the insured after taking upon itself the defence of an action for bodily injuries alleged thus to have been caused is precluded from asserting that the case is one not covered by the policy, it is not precluded from refusing to pay the insurance money before the insured has paid the judgment in the action for bodily injuries, if the policy makes this a condition precedent to liability.

If a policy, insuring a contractor against liability for bodily injuries suffered by persons not employed by him caused by the negligence of the insured and resulting from the operation of his trade or business, contains a provision that no action shall lie against the company on the policy unless it shall be brought by the insured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after a trial of the issue, there is no liability of the insurance company by reason of a judgment obtained against a third person in an action defended by the insurance company for bodily injuries caused by the negligence of the insured, if the judgment has been paid by the third person and the insured although he has given a bond of indemnity to the third person has not paid the amount of the judgment.

Equity will not enforce a contract of indemnity where the party seeking to enforce it has not performed an act which by the terms of the contract is made a condition precedent to the indemnifier's liability.

BILL IN EQUITY, filed February 25, 1902, by the principal and sureties on a bond of indemnity given by the first named plaintiff to the New York, New Haven, and Hartford Railroad Company, against that railroad company and the Union Casualty and Surety Company, to restrain the defendant railroad company from the further prosecution of an action against the plaintiffs on the bond of indemnity and also of an action of tort against the first named plaintiff, and to compel the defendant insurance company to pay to the defendant railroad company all sums which the defendant railroad company properly had paid in consequence of a judgment obtained against it by one O'Leary.

In the Superior Court the case was heard by *Richardson,* J., who made certain findings, the material portions of which are

quoted later in the statement of the case taken from the opinion of the court. The judge made a decree for the plaintiffs granting the relief prayed for; and the defendants appealed.

The policy mentioned in the opinion issued by the defendant insurance company to the first named plaintiff contained the following heading:

" Against Loss from Common Law or Statutory Liability.

" For damages on account of bodily injuries, fatal or non-fatal, accidentally suffered by any person or persons not employed by the assured at or about any of the work of the assured, described in the application, caused by the negligence of the assured and resulting from the operation of the trade or business described in the said application. Provided, however, that": [Here followed certain special agreements.]

The policy among other provisions contained the following:

" This insurance is subject to the following conditions, which are to be construed as conditions precedent of this contract: —

" 1. The assured, upon the occurrence of an accident, shall give immediate notice thereof in writing with full particulars to the home office of the company, at St. Louis, Mo., or to its duly authorized agent. He shall give like notices, with full particulars of any claim which may be made on account of such accident.

" 2. If thereafter any suit is brought against the assured to enforce a claim for damages on account of an accident covered by this policy, immediate notice thereof shall be given to the company, and the company will defend against such proceeding, in the name and on behalf of the assured, or settle the same at its own cost, unless it shall elect to pay the assured the indemnity provided for in Clause 'A' of Special Agreements as limited therein."

" 8. No action shall lie against the company as respects any loss under this policy, unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue. No such action shall lie unless brought within the period within which a claimant might sue the assured for damages, unless at the expiry of such period there is such an action pending against the assured, in which case an action may be brought against the

company by the assured within thirty days after final judgment has been rendered and satisfied as above. In no case, except that of minors, shall any action lie against the company after the expiration of six years from the date of the given injuries or death. The company does not prejudice by this clause any defences to such action which it may be entitled to make under this policy."

The following statement of the case is taken from the opinion of the court.

The facts which gave rise to the filing of the bill were as follows: The plaintiff O'Connell was a contractor, and at the time in question was engaged in building a section of Stony Brook conduit for the city of Boston, near the tracks of the defendant railroad company. In carrying on this work it became necessary to set up one of the guys of a derrick across the tracks of the defendant railroad company, and on application being made to it, a license so to do was given to the plaintiff by it. The guy was set up too low, and in consequence two of the defendant railroad company's brakemen were injured while riding on the top of freight cars. These accidents occurred on December 17, 1897. On the twenty-eighth day of that month, the plaintiff O'Connell gave the company a bond with two sureties in the penal sum of $1,000, conditioned to save it harmless from all loss by reason of the injuries, in order to prevent the revocation of the license to maintain the guy. On the eighteenth day of the following January, one of the brakemen, O'Leary, took out of the United States Circuit Court a writ against the railroad company, with an *ad damnum* of $6,000. Some two months later, O'Connell discovered that the accident policy which had been issued to him by the defendant surety company covered " bodily injuries . . . accidentally suffered by any person or persons not employed" by him, caused by his negligence, as well as those " suffered by any employee or employees." He thereupon notified the surety company of the action brought by O'Leary against the railroad company, and on April 9, in spite of the notice not having been given within the time stipulated for in the policy, the surety company wrote to O'Connell's attorney a letter, in which, after referring to the action of O'Leary against the railroad company, " for which it is probable that Mr. O'Con-

nell is responsible," they state: "Mr. O'Connell has since found that he held a liability policy with this company under which we will take charge of this particular case when we succeed in getting full information as to the status of the case at the present time." The information was furnished, and an attorney retained by the surety company entered an appearance for the railroad company and tried the action for it in the following June. The trial resulted in a verdict for the plaintiff in the sum of $3,625. Exceptions were taken by the defendant which the attorney retained by the surety company desired to take to the Circuit Court of Appeals. To enable him to do this he asked the railroad company to give a bond. This the railroad company refused to do unless a bond was given to it, conditioned for the payment of any judgment and costs and expenses incurred by it in the action. The attorney retained by the surety company then asked O'Connell or his attorney to give such a bond to the railroad company, and such a bond in the penal sum of $5,000 was given by O'Connell and two sureties, on October 24, 1898. The plaintiff O'Connell and his attorney testified that the attorney retained by the surety company and its general manager and the claims attorney promised O'Connell that if he would give the bond to the railroad company the surety company would pay the judgment recovered by O'Leary against the railroad company, if judgment was ultimately rendered in his favor. The attorney who tried the action brought by O'Leary against the railroad company under the surety company's retainer testified that when O'Connell's attorney asked him if the surety company would stand behind O'Connell on the bond if he gave the bond asked for, he answered that he did not "know about that," and that O'Connell, his attorney and the witness then went to the office of the surety company, where they found the general manager and claims attorney; that the plaintiff O'Connell's attorney then asked them the question previously asked by him of the witness, and that the general manager or the claims attorney answered "in some form of words" that they "thought that as the company had undertaken the defence there was no doubt that the company would pay." This testimony was corroborated by the claims attorney. The plaintiffs also introduced evidence that the railroad company agreed to look to the surety company for the performance of the

condition of the bond given by him to the railroad company, and not to the principal and sureties who signed it. This was denied by the railroad company. The bond was given, the exceptions were argued and overruled, and execution issued against the railroad company in May, 1899. On May 25, 1899, the railroad company paid on the execution the sum of $3,978.07. On the fifth day of the following October the surety company's agent in Massachusetts wrote to O'Connell's attorney that the surety company "takes the position that it is not liable to Mr. O'Connell on his policy with that company." On the following day the railroad company put the $5,000 bond in suit, and on the thirteenth day of the following December it put the $1,000 bond in suit and brought a common law action of negligence against O'Connell. The cases being on the short list for trial in the Superior Court on February 25, 1902, the bill now before the court was filed. This bill counts on the surety company's agreement to pay the judgment recovered by O'Leary against the railroad company and to look to the surety company for the performance of the condition of the $5,000 bond. The prayer of the bill is that the railroad company be restrained from further prosecuting the action brought by it against O'Connell and the sureties on the two bonds, and the other action brought by it against O'Connell, and that the surety company be ordered to pay to the railroad company all sums paid by it to O'Leary. A hearing was had on the merits, the evidence was taken by a commissioner, and a final decree was made in favor of the plaintiff, from which the defendant surety company took an appeal.

The following findings were made by the judge who heard the suit: "In addition to other facts not in dispute, I find that from the time the defendant Union Casualty and Surety Company assumed the defence of the action of O'Leary *v.* The New York, New Haven & Hartford Railroad Company, on March 19, 1898, which it did at its own request, and employed Mr. Proctor to defend that action, it was the general understanding between the said Union Casualty and Surety Company, Mr. O'Connell and said railroad company (parties to the bill), that the accident to O'Leary was one for which, directly or indirectly, O'Connell was liable, and so that it was one for which the said Union Casualty and Surety Company was liable to indemnify O'Connell under

its policy to him; and it was the general understanding between them that the said Union Casualty and Surety Company took up the defence of the O'Leary case because of its own supposed ultimate liability to O'Connell if there should be a verdict and judgment against the New York, New Haven and Hartford Railroad Company in said suit of O'Leary against the said railroad company, and that the said Union Casualty and Surety Company, by virtue of its policy to O'Connell, intended to and would protect and hold O'Connell harmless against loss or damage by reason of said accident to O'Leary; and this general understanding existed down to the letter of October 5, 1899, . . . during which time the conduct of the three parties was consonant with this understanding.  The bond of O'Connell for $5,000 to the railroad was given at the request of the Union Casualty and Surety Company, in order that it might take the case of O'Leary *v.* The New York, New Haven & Hartford Railroad Company, on writ of error to the Circuit Court of Appeals, which the said Union Casualty and Surety Company desired to do or to have done.

"I do not find that Mr. Proctor, at the time said $5,000 bond was given, in express terms agreed with or to Mr. Cronan or Mr. O'Connell, if O'Connell would give that bond that the Union Casualty and Surety Company would save O'Connell harmless or pay whatever sum he had to pay to the railroad company by reason of it, or would hold him harmless on such bond with any intention thereby to create any new obligation of the Union Casualty and Surety Company to O'Connell; yet at that time, as before, I think and find that the general understanding among all the parties was, as before stated, that the Union Casualty and Surety Company would indemnify, protect and save O'Connell harmless against loss or damage in respect to it, and all parties acted upon that understanding down to the letter of October 5, 1899."

*F. A. Farnham,* for the New York, New Haven, and Hartford Railroad Company.

*R. W. Nason,* for the Union Casualty and Surety Company.

*G. R. Swasey,* for the plaintiffs.

LORING, J. [After the foregoing statement of the case.] We are of opinion that the decree in favor of the plaintiffs must be reversed.

The judge has found that neither of the two promises counted on in the bill now before us was in fact made, and the plaintiffs have not undertaken to overturn that finding of fact.

What the plaintiffs have contended for here is that the final decree can be justified on the ground that under the findings made below the surety company is estopped to set up the defence set up by it. But the policy issued by the surety company to O'Connell is in the same form as that under consideration in *Connolly* v. *Bolster*, *ante*, 266, and under the decision in that case payment of the O'Leary judgment by O'Connell is a condition precedent to an action on the policy. If, therefore, we assume in favor of the plaintiffs (without making a decision to that effect) that after the defendant surety company had taken on itself the defence of the action it was precluded from afterwards taking the position that the case was not one covered by the policy, still the plaintiffs have not made out a case here, because the plaintiff O'Connell has not paid the judgment entered in the action defended by the surety company.

There is nothing in the finding of the judge which amounts to a waiver of this condition precedent to the defendant surety company's liability. To create a waiver there must be some act inconsistent with the right waived. There is nothing found here or in the evidence on which that finding was made inconsistent with a determination from the beginning on the part of the surety company to insist that when the time came for payment under the policy payment should be made in accordance with the terms of the policy and on no other terms ; that is to say to pay when O'Connell had paid the judgment in the action which the company had tried, and which for that reason it was estopped to say was not an action fixing its obligation under the policy.

The difficulty is not avoided by *Wolmershausen* v. *Gullick*, [1893] 2 Ch. 514, and the other cases cited by the defendants. The doctrine of those cases is that while one holding a covenant of indemnity or one who has a right to contribution cannot sue at law until he has paid, he can maintain a bill in equity to compel the covenantor or person bound to contribute to make payment directly to the creditor. But the doctrine of those cases is that equity will compel specific performance of the obligation due from the defendant. It is a relief given in case of general

covenants of indemnity, as Mr. Justice Story states it. Story, Eq. Jur. § 850. Such a bill cannot be maintained where the plaintiff has not performed a covenant which by the express terms of the contract which he asks to have specifically performed is a condition precedent to any liability on the part of the defendant. In such a case the party to be indemnified is not in a position to ask for specific performance of the contract of indemnity.

*Decree reversed; decree of bill dismissed to be entered.*