## Fidelity & Casualty Company of New York v. Martin.

### (Decided February 19, 1915.)

### Appeal from McCracken Circuit Court.

1. Insurance—Indemnity Insurance Policy—Character of Indemnity—Action on—When and By Whom May Be Instituted.—A policy affording indemnity against loss from the liability imposed by law upon the assured for damages on account of bodily injuries or death suffered by any person or persons, resulting by reason of the use, ownership or maintenance of the assured's automobile; and which provides: "No action shall be brought against the company under or by reason of this policy unless it shall be brought by the assured for a loss * * * that the assured has actually sustained by the assured's payment in money of a final judgment rendered after a trial in a suit against the assured * * *," is a policy of indemnity against loss actually sustained and paid in money by the assured, and only entitles the assured to bring an action upon the policy against the insurer after a judgment shall have been recovered against the assured by one who has sustained an injury from the assured's automobile, and after such judgment shall have been paid in money by the assured.

2. Insurance—Right of Insurer to Defend Action Brought Against Assured by Person Injured—Effect of Defense by Insurer—Judgment Against Assured Does Not Conclude or Estop Insurer.—Where the insurer, by the terms of the policy reserves the privilege of defending or settling claims for damages covered by the policy, and the assured undertook therein to furnish all needful assistance in making such defense, and that he would not voluntarily assume any liability to the person injured, interfere in any negotiations or legal proceedings that might be conducted by the insurer on account of any claim for such damages, made by the person injured, nor settle such claim at his (assured's) own cost without the written consent of the insurer, the fact that the insurer made defense for the assured in an action brought against the latter for damages by the person injured, did not obligate it (the insurer) to make the defense successful or make it liable upon the judgment if the defense should be unsuccessful, as other provisions of the policy prevent the judgment from having such effect and expressly declare that the only liabil-

# F. & C. Co. of New York v. Martin. 13

ity it imposes upon the insurer is liability for loss actually sustained and paid in money by the assured, after a final judgment recovered against the latter by the person injured.

3. Contracts—Privity of Contract—Doctrine of—When not Applicable. —Whatever obligation arises out of a contract is due to the person to whom the obligation exists or is made; therefore, an action for the breach of a contract can, as a rule, be brought only by one who is a party to the contract. An exception is allowed in the case of the third party, for whose benefit a contract is made. In such case he may be allowed to bring an action in his own name, but it must be made to appear that when the contract was made some obligation or duty was owing from the promisee in the contract to the party to be benefited, and not merely that the performance of the contract might be made to benefit him. But the doctrine of privity of contract cannot be invoked in an action brought on an indemnity policy like that involved in this case, brought by one not a party thereto, to enforce satisfaction of a judgment for damages he has recovered against the assured's administrator for injuries inflicted by the assured's automobile, as the policy was not written for his protection or even remotely for his benefit, its sole object being to indemnify the assured against a loss sustained and actually paid by him. Insurance under such a policy is a matter wholly between the insurance company and the assured, in which the third person, the party injured, has no legal or equitable interest. This is necessarily so where, as here, the doctrine of privity of contract is excluded by the terms of the policy, which makes it a contract exclusively for the benefit of the assured, and confines to him the right of action against the insurance company, which even he cannot bring until he sustains a loss by the payment in money of a liability.

4. Contracts—Cannot Be Made for Parties by a Court of Equity— Enforced According to Its Terms.—A court of equity has no right to make a contract to suit one of the parties. It must take the contract as it finds it and determine the rights of the parties from it as they, themselves, make or leave it.

5. Insurance—Attachment—Will Not Lie in the Absence of a Cause of Action.—Where, as in this case, the policy of insurance imposes no liability upon the insurer in the absence of a showing of loss actually sustained and paid in money by the assured or his administrator in satisfaction of the judgment obtained against the administrator for damages sustained to a third person, there is no indebtedness owing by the insurer and nothing in its hands going to the estate of the assured that can be subjected by garnishment to the satisfaction of the judgment in favor of such injured person.

BERRY & GRASSHAM and FRED FORCHT for appellant.

HENDRICK & NICHOLS, EUGENE GRAVES and CROSSLAND & CROSSLAND for appellee.

Opinion of the Court by Judge Settle—Reversing.

May 14, 1912, the appellee, Ed Martin, was run over upon a street of the city of Paducah by an automobile owned and operated by one Lon Wells. The injuries thereby inflicted upon appellee were of a painful and permanent character. In July following appellee instituted an action in the court below to recover of Wells the damages sustained by him on account of the injuries referred to. After Wells had been duly summoned, but before the case came to trial, he died intestate, domiciled in McCracken County. Following his death his estate, by proper order of the McCracken County Court, was placed in the hands of F. G. Rudolph, public administrator of that county, for administration, and thereafter, by an order of the McCracken Circuit Court, the action which had been brought by appellee against Lon Wells was revived against F. G. Rudolph as administrator of his estate.

In the trial which followed in that court appellee recovered a verdict and judgment against the administrator for the sum of $4,500.00, with interest at 6% per annum from the date of the judgment until paid, and his costs expended in the action, amounting to $32.15. An execution having been issued on this judgment and returned "no property found," appellee, by this action in equity, brought against F. G. Rudolph, administrator of the estate of Lon Wells, deceased, in the McCracken Circuit Court, sought satisfaction of the judgment by process of attachment; to this end, alleging its obtention, the return of *nulla bona,* and the insolvency of Well's estate, but that the appellant, Fidelity & Casualty Company, was indebted to Well's administrator in a sum equal to the amount of appellee's judgment, upon an employer's indemnity policy which it had issued to the decedent, Lon Wells, before the accident in which the appellee, Martin, was injured; and by the terms of which policy appellant had obligated itself to pay all damages that might be sustained by any person through the negligent operation of the automobile by Wells. It was further alleged that appellee was entitled to receive and have applied to the payment of his judgment the amount thus claimed to be owing by appellant to the estate of Wells. A general order of attachment was prayed and issued against the administrator of Wells and appellant, and a copy thereof served on each of them.

After service upon it of the order of attachment appellant filed an answer as garnishee, in which it averred that at the time of the service of the attachment, or garnishment, upon it, it did not have in its hands any money, choses in action or other thing belonging or going to the estate of the decedent Wells, or to the administrator thereof, and prayed to be dismissed with its costs. Several amended petitions· were filed by appellee, one of which made appellant a party defendant to the action, and, in substance, alleged that the policy issued to the decedent Wells by appellant, by its terms imposed upon the latter the obligation to pay and satisfy the judgment which Martin had recovered against the estate of the decedent. It was further alleged in the amended petition that by virtue of the order of attachment issued on the original petition in equity and its service upon appellant as garnishee, the appellee Martin had a lien on·the insurance money or indemnity claimed to be due from appellant to the estate of Wells, and for the amount alleged to be due under the policy, judgment was asked against appellant.

In another of his amended petitions appellee further alleged that by taking control of the assured's and·his administrator's defense in the original action for ·damages brought by appellee, appellant became bound by the judgment recovered by the latter and estopped to deny its liability upon the policy.

Obviously to aid appellee in compelling, if possible, the payment of his judgment by appellant,· F. G. Rudolph, as administrator of the estate of Lon Wells, deceased, filed in the suit in equity his answer, which he made a cross-petition against the appellant, and therein asked the court to adjudge that appellant be required to answer and defend the action and compelled to pay and discharge the liability of the estate of Lon Wells, deceased, to the appellee, Martin; basing the relief thus asked on the allegations in the answer and cross-petition that appellant, for a valuable consideration paid to it by the decedent Wells, issued and delivered to him during his lifetime its policy, in and by the provisions of which it obligated itself to pay all damages that might be caused to any person through the negligent operation of the automobile owned by the decedent, and to indemnify and hold the decedent harmless as to any damages that might result to a third person by paying same when

ascertained by a judgment recovered against the assured by the person injured.

By an amendment the administrator made more specific various averments of his original answer and cross-petition, alleged the insolvency of the estate of his decedent, that he had received but $2.92 by way of assets of the estate, which he had paid to appellee; and prayed for himself as administrator a personal judgment against appellant for the amount of the judgment which appellee had recovered against him as the administrator of Wells' estate.

To the petition as amended and the answer and cross-petition of the administrator, as amended, appellant filed demurrers. The court sustained the demurrer to the answer and cross-petition of the administrator, as amended, and the latter failing to plead further his answer and cross-petition, as amended, was dismissed. From that ruling the administrator failed to appeal.

Appellant's demurrer to the petition, as amended, was overruled by the court, to which ruling it excepted. It thereupon filed an answer wherein, after traversing the affirmative matter of the petition, as amended, it, in substance, alleged: First, that by its terms no liability could result to it upon the policy it issued to Wells, except for a loss sustained and actually paid in money by the latter or his administrator in satisfaction of a final judgment, rendered after a trial in an action against the assured or his administrator by the person injured by the assured's negligent operation of his automobile; and that no such loss was ever paid in money by the assured or his administrator. Second, that its taking control of the defense in the action brought by appellee against the assured was a right given it by the policy, the exercise of which did not make the judgment recovered by appellee binding upon it or estop it to deny liability on the policy, because by the terms of the policy the judgment is prevented from having such effect.

To this answer appellee interposed a demurrer, which, after first overruling, the court sustained. To this ruling appellant excepted, and as it failed to plead further, the court adjudged that appellee recover of it the sum of $4,500.00, being the amount of the judgment previously obtained by appellee against Wells' administrator, with 6% interest from February 12, 1913, and its costs expended in this and the original action, for all of which

execution was awarded. This appeal seeks the reversal of that judgment, and the question which it presents for decision has not been passed on in this jurisdiction, though it seems to have been well settled in numerous other jurisdictions.

The judgment of the circuit court, if sustained, must be made to rest upon one of two grounds: either that the recovery of the judgment by appellee against Wells' administrator was a loss actually sustained by the estate of the assured in the meaning of the policy, for which appellant became liable, without the payment of the judgment by the assured or his administrator in money; or that appellant, having taken charge of the defense in the original action of the appellee, Martin, against Lon Wells, as its policy provided it might do, is concluded by the judgment rendered in that action and, therefore, estopped to deny its liability therefor under the policy. Whether either of these propositions is sustained by the provisions of the policy we must now determine.

The character of the indemnity provided by the policy is set forth in clauses 1 and 2 thereof:

"(1) To INDEMNIFY the person, firm, or corporation, named in statement 1 of the Schedule of Statements and herein called the Assured, AGAINST LOSS FROM THE LIABILITY IMPOSED BY LAW UPON THE ASSURED for damages on account of bodily injuries or death suffered by any person or persons as the result of an accident occurring while this policy is in force and caused by reason of the use, ownership, or maintenance of any of the automobiles described in statement 4 of the said schedule, while used as described in statement 6 of the said schedule within the limits of the United States of America, Canada, and Mexico.

"(2) To DEFEND in the name and on behalf of the Assured any suit brought against the Assured to enforce a claim, whether groundless or not, for damages on account of bodily injuries or death suffered, or alleged to have been suffered, by any person or persons within the limits designated in the preceding paragraph and under the circumstances therein described, and as the result of an accident occurring while this policy is in force."

The indemnity afforded is subject to certain conditions specified in clauses A to T, inclusive, contained in the policy. Clause A provides:

"Upon the occurrence of an accident the Assured shall give immediate written notice thereof, with the fullest information obtainable at the time, to the company at its home office or to the agent who has countersigned this policy. If a claim is made on account of such accident the Assured shall give like notice thereof with full particulars. If thereafter any suit is brought against the Assured to enforce such a claim, the Assured shall immediately forward to the company at its home office every summons or other process as soon as the same shall have been served on him. The company reserves the right to settle any claim or suit. Whenever requested by the company, the Assured shall aid in securing information, evidence and the attendance of witnesses; in effecting settlements; and in prosecuting appeals. The Assured shall at all times render to the company all cooperation and assistance within his power."

Clause E: "The Assured shall not voluntarily assume any liability; nor interfere in any negotiations or legal proceedings conducted by the company on account of any claim; nor, except at his own cost, settle any claim, nor incur any other expense without the written consent of the company previously given; except that he may provide at the time of the accident, and at the cost of the company, such immediate surgical relief as is imperative."

Clause K, which more particularly concerns the question involved in the instant case, is as follows:

"No action shall be brought against the company under or by reason of this policy unless it shall be brought by the Assured for a loss, defined hereunder, after final judgment has been rendered in a suit, described hereunder, and within two years from the date of such judgment, to-wit, for a loss that the Assured has actually sustained by the Assured's payment in money—(a) of a final judgment rendered after a trial in a suit against the Assured; (b) of the expenses (excluding any payment in settlement of a suit or judgment) incurred by the Assured in the defense of a suit against the Assured. The company does not prejudice by this condition any defenses against such action that it may be entitled to make under this policy."

By clause R of the policy the company's liability for loss from an accident resulting either in bodily injuries to or in the death of one person, is limited to $5,000.00

and such expenses as it may incur in defending any suit, including the interest on any verdict or judgment and any costs taxed against the assured.

In view of the great weight of authority to that effect it is our conclusion that the policy here involved indemnifies against loss and not against liability. This seems clearly to appear from clause K, which declares:

"No action shall be brought against the company under or by reason of this policy unless it shall be brought by the *assured for a loss*, defined hereunder, after final judgment has been rendered in a suit, described hereunder, and within two years from the date of such judgment, to-wit: for a loss that the assured has *actually sustained by the assured's payment in money*—(a) *of a final judgment rendered after a trial in a suit against the assured* * * *."

It is not perceived that the meaning of the foregoing provisions of clause K is affected by the stipulations in the preceding clauses; indeed, a compliance with clause K is made a condition precedent to any right of action on the policy. The policy is one of indemnity against loss actually sustained and paid in money by the assured, without regard to who assumes the defense or whether it is successfully or unsuccessfully made. In the preceding clauses, A and E, the appellant reserved the privilege and assumed the obligation of defending or settling claims for damages covered by the policy, and the assured undertook to furnish all needful assistance in making a defense and agreed that he would not voluntarily assume any liability, interfere in any negotiations or legal proceedings that might be conducted by appellant on account of any claim for such damages, nor settle such claim at his own cost without written consent of appellant. But there is nothing in any provision of clauses A and E which actually or by implication declares that in the event such defense as appellant might make to an action brought against the assured for damages should be unsuccessful, it would pay the judgment. The question of payment is confined to and provided for in clause K. It would, therefore, seem to follow that the fact that appellant made defense for the assured or his administrator in the action for damages brought by appellee, did not estop it from denying liability under its policy in the present action. The right to defend being given appellant by the policy we must suppose that the

burden of making the defense was assumed for the reason that the award to be made in that action might finally be the measure of appellant's own responsibility. And, indeed, would have been, if the administrator of the assured had, as provided by clause K, paid the judgment recovered against him by appellee. But, in view of the provisions of the policy to the contrary, the act of appellant in defending the action for damages in behalf of the assured or his administrator, was not an agreement and did not constitute an undertaking to pay appellee's judgment for the assured or his administrator.

We are unable to see that the doctrine of privity of contract, invoked by appellee's counsel, can have any application here. The policy in question was not written for the protection of appellee, or even remotely for his benefit. Its sole object was to indemnify the assured, Wells, against loss sustained and paid. As said in 15th Cyc., sub-division 8, page 1038:

"Insurance under a policy of this kind is a matter wholly between the insurance company and the assured, in which the employe has no legal or equitable interest any more than in any other property belonging absolutely to the assured. The assured may use the proceeds of a settlement made by him with the insurance company as he sees fit, as there is no privity of contract between the assured and the employe."

Whatever obligation arises out of a contract is due to the person to whom the obligation exists or is made; therefore, an action for the breach of a contract can, as a rule, be brought only by one who is a party to the contract. An exception is allowed in the case of the third party, for whose benefit a contract is made. In such case he may be allowed to bring an action in his own name, but it must be made to appear that *when the contract was made* some obligation or duty was owing from the promisee in the contract to the party to be benefited, and not merely that the performance of the contract might be made to benefit him. If this were not true one's responsibility for not carrying out his agreement with another would have no limit, as the ill effects of his failure to do so could be taken advantage of by one claiming to be affected, even to a remote degree. Cardwell v. Atwater, 15 R., 570; Triplett v. Helm, 5 J. J. Mar., 651; Powers v. Eva, 2 Bibb., 317; Mobile Life Ins. Co.

.v. Brame, 95 U. S., 754; Carter v. Aetna Life Ins. Co., 91 Pac. (Kan.), 178. Manifestly the doctrine of privity can have no place in the consideration of this case, as it is excluded by the terms of the policy, which make it a contract exclusively for the benefit of the assured, and confines to him the right of action against the insurance company, which even he cannot bring until he sustains a loss by the payment in money of a liability. For these reasons the authorities cited by appellee's counsel as bearing on this aspect of the case are inapplicable.

We have been referred to a great number of cases which sustain appellant's contention, and but two holding to the contrary. Among those of the class first mentioned is that of Ford v. Atena Life Ins. Co., 70 Wash., 29, 120 Pac., 69, decided by the Supreme Court of Washington August 26, 1911. Ford, the plaintiff, was an employe of two structural iron contractors named Gerrick, and he attempted to compel the Aetna Life Insurance Company to pay a judgment for $2,476.00 and costs, which he had previously obtained against the Gerricks in an action for damages asserted for injuries he sustained through the Gerricks' negligence. The latter held an employers' liability policy issued by the Aetna Life Insurance Company, by the terms of which the Aetna company had assumed the defense of the suit which had been brought by Ford against the Gerricks. After Ford recovered judgment against the Gerricks the latter became insolvent and paid no part of the judgment. Thereupon Ford obtained a writ of garnishment against the Aetna Life Insurance Company, requiring it to appear and answer upon oath as garnishee. The Aetna company answered that it was not then, when the writ was served upon it, indebted to the Gerricks in any sum and did not have any property or effects of the Gerricks in its possession. It at the same time filed an answer admitting the issuance of a casualty policy to the Gerricks, which contained the following provisions:

"B.—If suit is brought against the insured to enforce a claim for damages covered by this policy, he shall immediately forward to the company every summons or other process, as soon as the same shall have been served on him, and the company will, at its own costs, defend said suit in the name and on behalf of the assured. * * (D) No action shall lie against the company to recover for any loss * * * or expense under this policy, un-

less it shall be brought by the assured for loss   *   *   *
or expense actually sustained and paid in money by him,
after actual trial of the issues.''

The insurance company also admitted that it had
defended for the Gerricks the suit brought against them
by Ford, and it was contended by the latter that by thus
defending and taking entire charge of the litigation the
insurance company assumed the payment of the judg-
ment recovered by Ford against the Gerricks, and that
condition D of the policy, above quoted, did not apply;
and, further, that the insurance was thereby changed
from an indemnity to liability insurance; but, in reject-
ing this contention, the Supreme Court of Washington,
in its opinion, said:

''The policy indemnifies against loss and not against
liability. It seems quite clear that the liability in clause
D for loss 'actually sustained and paid in money by him
after actual trial of the issues,' is not enlarged or
changed by the stipulations in the preceding clauses, but
that a compliance with its terms is made a condition
precedent to any right of action on the policy. In short,
the policy is one of indemnity against loss actually sus-
tained and paid in money by the assured, without regard
to who assumes the defense. In clause B the appellant
reserved the privilege and assumed the obligation of
defending claims for damages covered by the policy.
But this does not imply that in the event the defense is
unsuccessful it will pay the judgment. The question of
payment is provided for in clause D. This is the in-
terpretation we put upon a similar policy in Puget Sound
Improvement Co. v. Frankfort, etc., Ins. Co., 52 Wash.,
124, 100 Pac., 190, and Sheard v. United States Fidelity,
etc., Co., 58 Wash., 29, 107 Pac., 1024, 109 Pac., 276. The
same construction has been given to like policies in
other jurisdictions. Finley v. U. S. Casualty Co., 113
Tenn., 592, 83 S. W., 2; Frey v. Bath Gas, etc. Co., 97
Me., 241, 54 Atl., 395, 59 L. R. A., 444, 94 Am. St. Rep.,
500; Connolly v. Bolster, 187 Mass., 266, 76 N. E., 981;
Clark v. W. R. Bonsal & Co., 157 N. C., 270, 73 S. E.,
954; Carter v. Aetna, etc. Co., 76 Kans., 275, 91 Pac.,
178, 11 L. R. A. (N. S.), 1115; Cayard v. Robertson, etc.,
123 Tenn., 392, 131 S. W., 864, 30 L. R. A. (N. S.), 1224;
O'Connell v. N. Y. N. H. & H. R. R., 187 Mass., 272, 72
N. E., 979; Appell v. Peoples Surety Co., 148 Appeals
Div., 70, 132 N. Y. Supplemental, 200; Conqueror Z. &

L. Co. v. Aetna Life Ins. Co., 152 Mo. App., 332, 133 S. W., 156.''

In referring to the legal effect of the defense made by the insurance company to the suit brought by Ford against the Gerricks, the court, relying on Carter v. Aetna Ins. Co., 76 Kans., 272, further said:

''The fact that the insurance company made the defense for the bridge company against plaintiff's claim for damages did not estop it from denying liability under its contract. The right to defend was specifically given by the contract, and this burden was assumed, for the award to be made in the proceeding might ultimately be the measure of its own liability. To defend the action on behalf of the assured was in no sense an agreement to pay the plaintiff's judgment and could not have misled the plaintiff.''

In Connoly v. Bolster, 187 Mass., 266, the Supreme Court of Massachusetts construed a policy similar to the one involved in the instant case, in doing which it disagreed with the conclusion reached by the Supreme Court of New Hampshire in Sanders v. Frankfort Marine A. & P. Glass Ins. Co., 72 N. H., 485, one of the two cases which sustain the contention of the appellee here. In the opinion it is said:

''The conclusion that payment of the judgment recovered by the employe was not a condition precedent to an action on the policy, was reached in Sanders v. Frankfort Ins. Co., on these grounds: 'The word ''defend'' in the second clause, means to protect and secure against attack—in short, to successfully defend'—and, therefore, included an obligation on the part of the company to pay the judgment if the case defended resulted in a judgment against the assured. That the second clause of the general agreements, so construed, was not consistent with the eighth clause of the general agreements, which stipulates, in terms, that 'No action shall lie against the company as respects any loss under this policy, unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in the satisfaction of a judgment after trial of the issue.' That, if the eighth clause is construed to cover cases of which the insurance company has assumed the defense, it is inconsistent with the second clause, so construed, and consequently the eighth clause must be construed not to cover those cases, but to be confined to

cases of which the insurance company has not assumed the defense.''

Rejecting this view, the court said:

''We are of opinion, however, in the first place, that the word 'defend' in the .second clause is to have its natural import; that it means here what it means when counsel are retained to defend an action; and that it is not to be extended beyond that, and to mean to 'successfully defend.' In the second place, the second clause is an obligation in addition to the obligation to indemnify the assured against loss, like the suing and laboring clause in a marine policy, and not a clause qualifying the main obligation of the policy to 'indemnify' against loss from liability for damages on account of bodily injuries to employes caused by negligence of the assured. The object of this second clause is plain, when taken in connection with the third. It is plainly inserted as an additional obligation and privilege for the protection of the insurance company, on the assumption that it is for the pecuniary interest of the company to be given the conduct of and to defend the action which is to fix its liability, and the amount to be paid when liable, rather than to leave that matter to be dealt with by the several persons insured respectively. * * * Whether the insurance company is bound to pay the judgment depends upon the terms of its agreement to indemnify the assured against loss, and the eighth clause, in terms, provides that no action shall lie for 'any loss under this policy,' unless brought by the assured 'to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue.' ''

The .same court, in another opinion, handed down the same day, in the case of O'Connell v. N. Y. N. H. & H. R. Co., 187 Mass., 272, 72 N. E., 979, also held that the fact that the surety company undertook the defense of an action growing out of injuries to a servant of the assured, did not estop it from denying that the case was covered by the policy, and did not preclude it from relying on the provision of the policy making payment of the judgment by the assured a condition precedent to an action on the policy.

Cayard v. Robertson & Hobbs, 123 Tenn., 382, is also an analagous case. Cayard recovered a judgment of $5,000.00 damages against Robertson & Hobbs for injuries sustained. The latter did not pay the judgment, nor

could it be collected from them because of their insolvency. Robertson & Hobbs held an indemnity policy from the Amsterdam Casualty Company, similar to that in the instant case. A bill in equity was instituted by Cayard against Robertson & Hobbs and the casualty company for the purpose of collecting the judgment from the casualty company. The policy contained the following provisions:

"(2) If thereafter any suit is brought against the assured to enforce a claim for damages on account of an accident covered by this policy, immediate notice thereof shall be given to the company, and the company shall defend such suit in the name and on behalf of the assured, or settle the same * * * (7) No action shall lie against the company as respects any loss under this policy, unless it shall be brought by the assured himself, to reimburse him for loss actually sustained and paid by him in satisfaction of a final judgment after trial of the issues."

In directing the dismissal of the bill the Supreme Court of Tennessee held that an employe obtaining a judgment against his employer for a personal injury, would not, on the insolvency of the latter, be entitled to a decree against an insurer in an indemnity policy, stipulating indemnity to the employer against loss for damages on account of bodily injuries, and that no action would lie against the insurer unless brought by the employer to reimburse himself for loss actually sustained, i. e., paid, although the insurer, following the happening of the accident and notice thereof, took exclusive control of the negotiations for a settlement and of the defense of the action brought by the employe for his injuries. This ruling seems to have, been rested upon the ground that there was no privity of contract between the servant injured and the insurance company, that the fund provided for an indemnity is not a trust fund, and that the loss contemplated was that which the master would sustain by the satisfaction of the judgment obtained against him by the servant. Among other things it is in the opinion said:

"We had occasion in Finley v. Casualty Co., 113 Tenn., 592, to consider a policy in all material respects like the one at bar. We there recognized the distinction made by the authorities between a policy insuring an employer against liability and one agreeing to indemnify

the assured 'against loss from liability for damages,' and it was held that the policy then in question was of the latter character, and, further, that the amount of the insurance provided for in the policy did not become available until the payment of the loss by the assured, and could not be impounded by an employe and appropriated by him to an unsatisfied judgment against his employer."

It also appears from the opinion that counsel for Cayard relied upon the case of Sanders v. Frankfort, etc. Ins. Co., 72 N. H., 485, in support of their contention, but that the court refused to accept the construction of the policy adopted in that case.

In line with the cases referred to is that of Pfeiler v. Penn. Allen Portland Cement Co., etc., 240 Pa., 468, decided April 28, 1913. The facts, as well as the court's conclusion of law, will fully appear in the following excerpt from the opinion:

"The plaintiff obtained a judgment in an action for personal injuries against the Penn. Allen Portland Cement Company, which became insolvent and was adjudged a bankrupt. He filed a bill for subrogation to the rights of the cement company under an indemnity policy of accident insurance issued to it by the Aetna Life Insurance Company, and for a decree requiring the insurance company to pay to him the amount of his judgment against the cement company. The court sustained a demurrer and dismissed the bill. The insurance policy provided that: 'No action shall lie against the company to recover for any loss or expense under this policy unless it shall be brought by the assured for loss or expense actually sustained and paid in money by him after actual trial of the issue, nor unless such action is brought within two years after the payment of such loss or expense.' The cement company has paid nothing, and under the express terms of its contract it is not entitled to recover from the insurance company. Since it has no right of action, there is nothing to which the plaintiff could be subrogated. For this reason the bill was dismissed by the learned judge of the Common Pleas, and in the decree entered we fully concur."

In Clark v. Bonsal & Co., 157 N. C., 270, the same question was considered. Following a statement of the facts, it is in the opinion said:

"In construing contracts of this character the courts have generally held that if the indemnity is clearly one against loss or damages, no action will lie in favor of the insured till some damage has been sustained, either by payment of the whole or some part oi an employe's claim; but if the stipulation is in effect one indemnifying against liability, a right of action accrues when the injury occurs, or, in some instances, when amount and rightfulness of the claim has been established by judgment of some court having jurisdiction, this according to the terms of the policy; but, unless the contract expressly provides that it is taken out for the benefit of the injured employes, and payment of recoveries by them, none of the cases hold that an injured employe may, in the first instance, proceed directly against the insurance company.   *   *   *   An ordinary indemnity contract of this character is not made for the benefit of the employe, either in its express terms or in its underlying purpose. It is made for the protection and the indemnity of the employer, fortifying him against unexpected and uncertain demands which might otherwise prove disastrous to his business, and the rights arising under such a contract are his property, and actions to recover the same are and should be under his control. The nature of the contract and the principles applicable are well stated in one of the Massachusetts cases (Bain v. Atkins, 181 Mass., 240), as follows: 'The only parties to the contract of insurance were Atkins and the company. The consideration for the company's promise was only to him and his legal representatives. Not only was the plaintiff not a party to either the consideration or the contract, but the terms of the contract do not purport to promise an indemnity for the benefit of any person other than Atkins. The policy only purports to insure Atkins and his legal representatives against legal liability for damages respecting injuries from accidents to any person or persons at certain places within the time and under the circumstances defined. It contains no agreement that the insurance shall inure to the benefit of the person accidentally injured, and no language from which such an understanding or intention can be implied. Atkins was under no obligation to procure insurance for the benefit of the plaintiff, nor did any relation exist between the plaintiff and Atkins which could give the latter the right to procure insurance for the

benefit of the plaintiff. The only correct statement of the situation is simply that the insurance was a matter wholly between the company and Atkins, in which the plaintiff had no legal or equitable interest, any more than in any other property belonging absolutely to Atkins.' ''

The same conclusions with respect to a similar policy was reached by the Supreme Court of Iowa in Cushman v. Carbondale Fuel Co., 122 Iowa, 656. In that case the person injured, having obtained a judgment against the assured therefor, and failing to collect same, brought an action, as here attempted, against the insurer, to compel the payment of the judgment by the latter. The relief prayed was denied, the court saying:

''The obligation of the guarantee company was for the protection of the fuel company alone. The plaintiff was not a party to the contract, and had no legal right thereunder. While the policy provided that the guarantee company might appear and defend for the fuel company in any action brought against it for personal injuries, such provision was for the protection of the guarantee company alone, and imposed no liability upon it beyond the terms of the contract. A court of equity can, no more disregard the express provisions of the contract than could a court of law, and neither can make a new contract for the parties which would impose a liability not originally contracted for; hence, whatever relief a court of chancery might grant plaintiff in any event, must of necessity be based upon and be determined by the contract which the parties have themselves made. The only obligation of the guarantee company was to indemnify the fuel company against a 'loss actually sustained and paid in satisfaction of a judgment after trial of the issue.' This covenant is as explicit and certain as language could well make it, and, as between the parties to the contract, no recovery could be had against the guarantee company because the judgment against the fuel company was not paid, and consequently the covenant was not broken.''

To the same effect are the following cases: Travelers' Ins. Co. v. Moses, 63 N. J. Eq., 260; Stenbom v. Brown-Corliss Engine Co., 137 Wis., 564; Texas Short Line Ry. Co. v. Waymire, 89 S. W. (Texas), 452; Atlas Hardwood Lbr. Co. v. Georgia Life Ins. Co., 167 S. W.

(Tenn.), 109; American Emp. Liability Ins. Co. v. Fordyce, 62 Ark., 562.

As has been intimated, there seem to be but two cases that can be said to uphold the contention of appellee, viz., Sanders v. Frankfort, etc. Ins. Co., 72 N. H., 485, and Patterson v. Aden, 119 Minn., 308. In the Sanders case the decision of the court is mainly based on the theory that the word "defend" appearing in the policy means "to protect"—successfully defend; and that when the indemnity company contracted in its policy to defend any action brought against the assured, it had to do so successfully and defeat the plaintiff, otherwise the latter could recover of it the amount of the judgment obtained against the assured. In the opinion it is said:

"If 'to defend' means 'to protect, to secure against attack'—in short, to successfully defend—it is perfectly clear that the insurance company agree to perform their covenant of indemnity against loss by assuming the liability. This is conceded. But it is claimed that the agreement to defend against the proceedings means merely to contest the suit to final judgment. While, in a technical sense, to defend a suit is to contest it, the word 'defend' also includes the broader meanings above suggested. Webster's Dict. If the meaning were, as is claimed, merely the conduct of the litigation until judgment should be rendered, no reason has been suggested why the purpose was not explicitly stated. Having entered upon the defense of the suit, no way is perceived by which (at least before judgment) the insurance company could escape liability, except by settlement with the plaintiff or payment to the assured. The engagement is not merely to contest the suit to judgment, but to 'defend against such proceedings,' meaning necessarily all the proceedings in the suit founded upon the claim for damages against the insured."

The conclusion here stated would appear to force the insurance company to the alternative of either refusing to defend or of assuming the entire liability of the suit. This view of the matter seems to overlook the fact that the purpose of the insurance company in framing its contract, as was done in that case and the instant case, was not so much to require a solvent assured to first pay the judgment, as to prevent itself from being subrogated to a loss which an insolvent assured was relieved by his insolvency, from paying.

The Patterson case is so analagous in its facts and the reasoning of the opinion to the Sanders case that an elaborate discussion of it is unnecessary. Manifestly neither case is in accord with the great weight of authority; indeed, this is admitted by the opinion in the Patterson case.

It is argued by counsel for appellee that if appellant had intended its policy contract to be understood as it now insists upon its being construed, it would have so written it as to clearly give it such meaning. This might be answered by saying that appellant's form of policy is so written, but as first adopted and used, was susceptible of the construction given it in the Sanders and Patterson cases, *supra,* and which appellee would now give it; and because it and others then substantially like it, were so construed in the earlier cases of Anoka Lbr. Co. v. Fidelity & Casualty Co., 63 Minn., 286, and Ross v. Amer. Employment Liability Co., 56 N. J. Eq., 41, it resulted in appellee and other like insurance companies changing the wording of their policies so as to cover, as they now do, only liability which had been paid. Poe v. Phila. Casualty Co., 118 Md., 347. In other words, the earlier policies of this character were so worded as to insure employers against liability incurred to their employes for death or injuries resulting from the employer's negligence; and the courts naturally held that liability was fixed by the rendition of a final judgment, and that the casualty companies were liable on their contract, though the employer had not actually discharged his liability by payment; but this is not true of the later policies, such as that involved in the instant case, for, as stated, the amount of the insurance provided for in them does not become available until the payment of the loss by the assured.

It was said in argument, and not controverted, that in twenty of the States the courts of last resort have given the insurance contract under consideration the construction here contended for by appellant, and that only in New Hampshire and Minnesota have the courts of last resort adopted the construction contended for by appellee; the cases so holding being those of Sanders v. Frankfort, etc. Ins. Co. and Patterson v. Aden, *supra.* While we accord great weight to the ability and high standing of the two courts referred to, their interpretation of the contract is so obviously out of harmony with

the current of authority that we deem it unwise to adopt it.

It is not perceived that appellee is in a position to be benefited by his attachment. If the policy imposes no liability upon appellant, in the absence of a showing of a loss actually sustained and paid in money by the assured or his administrator, following the recovery by appellee of the judgment against the latter, there is no indebtedness owing by appellant and nothing in its hands going to the estate of the assured that can be subjected by garnishment. Allen v. Aetna Life Ins. Co., 145 Fed., 881.

It is complained by appellee that to construe the contract of insurance as insisted by appellant would ignore the numerous equities that exist in behalf of appellee, and subject him to the hardship of being deprived of compensation for his injuries. It is a sufficient response to say that we can do no more than determine the rights of the parties under the contract of insurance. As said in Bennett v. Stuart, 161 Ky., 264:

"A court of equity has no right to make a contract to suit one of the parties. It must take the contract as it finds it and determine the rights of the parties from it as they themselves make or leave it." Garnes v. Frasier & Foster, 115 S. W., 998.

However deserving appellee may be of compensation, what he is asking us to do is to aid him, a stranger to the contract, by giving it a meaning not authorized by its language, and that neither of the real parties to it intended it to have.

It follows from what has been said that, in our opinion, the circuit court erred in overruling appellant's demurrer to the petition, in sustaining appellee's demurrer to appellant's answer, and also in rendering the judgment appealed from. For the reasons indicated the judgment is reversed and cause remanded for proceedings consistent with the opinion.

Whole court sitting. Judges Hannah and Nunn dissenting.

### DISSENTING OPINION BY JUDGE NUNN.

On the idea that the policy in question was not written for the protection of the injured party, or employe, the court holds that if the owner or employer cannot, or will not, pay the damages sustained, then the insur-

ance company need not. In my opinion, such a construction of the policy outlaws it, and the business at once becomes a menace to industry and a threat to the life of employes.

Out of deference to the opinion of my associates, and in view of the weight of authority which supports their opinion, I have hesitated to take a contrary view. But, in the light of legislation and adjudication in Kentucky on the subject of compensation for injured employes, I feel constrained not only to dissent, but to give the reasons which to me seem sufficient to justify a contrary view.

This form of insurance—and I can make nothing else out of it, although called indemnity—is as worthy and desirable, properly considered, as life or fire insurance. The purpose of all insurance or indemnity is, or should be, to furnish financial aid or security against casualty or misfortune. Insurance or indemnity against death of a parent, or loss of a home, or against liability arising from injury to an employe, if taken and held in the right spirit, is a wise precaution for any one to take who has incurred duties of support or has assumed duties imposing legal liabilities. It is true a great many abuses have from time to time crept into the business of insurance, and, from these abuses, the companies, as well as the public, have frequently been imposed upon. But, in the main, the business has afforded the relief contemplated, although it has, no doubt, caused the loss of many uninsured homes and the death of some persons in cases where the insured's care for his own life was less than for the beneficiary; and in others where the beneficiary desired the proceeds more than the life of the insured. In its incipiency insurance policies were deemed wager contracts, and, therefore, illegal, but the paramount necessity for indemnity of this sort obtained for them a legal status in all cases where there is an insurable interest—that is, such an interest as would outweigh any inducement or incentive for either party to precipitate or bring about the contingency which renders the policy payable. By limiting insurance benefits to those having such interests, an insurable interest, and to the extent of that interest, the business of insurance has grown to large proportions, and has beneficially affected a large portion of society. But if the principle of insurable interest be overlooked or disregarded, then

the business is indefensible, and becomes a curse to society. This rule of insurable interest applies to all forms of insurance, and the kind in question should never be permitted to become an exception. There are three necessary parties or incidents to an insurance contract —the insurer, the person or property insured, and the beneficiary. The law requires the beneficiary to have an insurable interest. As construed by the court, the employer is not benefited by the policy, neither has he an insurable interest in the employe. If it be said that the employe is not a beneficiary and has no interest, insurable or otherwise, in liability insurance, then the opinion of the court—supported by the weight of authority though it be—eliminates the most necessary party to the contract, the beneficiary, whether he be an individual employe or one of a class of persons, and obliterates the only interest that is legitimately insurable in such cases. The inducements and incentives in the two remaining parties are so dangerous as to leave the contract without a redeeming feature, and render it more pernicious than an undisguised gambling contract. As already indicated, some features of employers' liability insurance are questionable at best. For instance, there is a provision that the insurance company will secretly defend in the name of the insured every claim presented by an employe, whether groundless or not, and, to the exclusion of the employer, will employ attorneys and take general charge of the case. The employer cannot interfere with the proceedings nor can he settle the claim. Any attempt at compromise or payment voids the policy. Such contracts in reality constitute the offenses of barratry, maintenance, and champerty, frequently and severely denounced by statute and common law, because they encourage strife and litigation and are injurious to public interests. It is also questionable if the employer who owes so many duties to his employe can properly be permitted to contract for indemnity against his own breach of those duties. It certainly is not conducive to safety of employes, because a reckless employer, feeling secure in the indemnity, will be careless and indifferent to the safety of places, tools and appliances where and with which his servants work. But these dangers, disadvantages, and legal obstacles in the way of the contract have been deemed, heretofore, to be counter-balanced by the protection given to industry against sudden and some-

times heavy liability arising from accident to employes, and the security given to them by affording a fund with which the liability may be met and the injured employe compensated. But the opinion of the court nullifies these redeeming features of the contract. It leaves no protection to industry against unexpected liability. It, in fact, makes insolvency or bankruptcy more probable. The contract, as construed by the company, and upheld by the court, means that the employer voids the policy if he pays the loss, and if he does not pay it, there is no liability on the company. It follows that there is a complete defense if the company, by withholding aid to the employer, makes it impossible for the employer to pay. So construed, the contract necessarily promotes and encourages bankruptcy. I do not believe the contract should be given any such construction, for, when taken as a whole, it is fairly susceptible of another construction compatible with principles of public policy, and in harmony with the public welfare. The right construction is to recognize an insurable and enforcible interest in the party or class who may have such a claim against the insured as amounts to a liability which may be imposed by law.

The company calls it an "Employers' Liability Policy." It is so printed in large type on both sides of it, and the main clause of the contract, printed in equally large type, is a covenant to indemnify the assured against loss from the *liability imposed by law* upon the assured for damages on account of bodily injuries or death suffered by any person or persons as the result of an accident occurring while the policy is in force. That idea runs through the policy, and it is clearly the purpose of it, unless a fine-print clause, hid away near the middle of the policy, gives to it an altogether different meaning. The hidden clause reads:

"No action shall be brought against the company unless for a loss that the assured has actually sustained by the assured's payment in money."

Taking that single clause as controlling the whole policy, there can be no mistake of its meaning, and a recovery cannot be had by any one unless the assured has actually paid the loss; but, if that is the meaning of it, then the contract as a whole is meaningless, if not vicious. It is unreasonable to presume that it was intended that after the assured had surrendered all control of

the litigation to the insurer, and after the insurer had exercised absolute control of the defense until judgment, then the assured must convert his assets into money, if he can, or be driven to the brink of bankruptcy or insolvency to pay a judgment in order that the company may be compelled thereafter to pay the insured.

Payment of a debt indemnified against and not existing when the covenant is made, as a condition precedent to the indemnifier's liability, has more than once been repudiated in Kentucky. In Robinson v. Morgan, 92 Ky., 307, the court said:

"It has been determined by this court that, though a condition or a covenant to indemnify against a debt or a duty already incurred is not broken without suit brought against the covenantee, yet when the covenant is to indemnify against a debt or duty which may accrue in the future, a liability to suit is a breach. Louis v. Crockett, 3 Bibb., 197. If Morgan's right of action did not depend upon the institution of suit against him, much less can it be made to depend upon his payment of money to the creditor."

It is absurd to say one possessing contractual ability and actuated by right motives would accept a policy, and pay his money for it, at the time understanding that he must go into his pockets and, perhaps at great inconvenience, pay over a large sum in settlement of the liability in order to have a cause of action against the company, or, if unable to pay, go into bankruptcy, when bankruptcy was the thing that he was contracting against. I am aware that it is no business of the courts to make contracts for litigants, but, where the whole contract is capable of two interpretations, that one should be adopted which is more favorable to the beneficiary, because the language used is that of the insurer. Mutual Life Ins. Co. v. Dunn, 106 Ky., 597; American Accident Company v. Reigert, 94 Ky., 549. And I am sure no method of construction should be adopted which would afford an incentive for the insurer to destroy the insured financially, or one that would create an inducement for the employer to be careless of the safety of his employes, without at the same time giving the employe a right under the contract to be compensated for an injury growing out of the increased hazard which the contract caused.

Clause 2 of the contract obligates the company to defend the suit. To defend means to protect, ward off, or repel the danger. It is not an obligation to attempt to defend. The purpose was to successfully defend and save the insured from liability and loss. The obligation is not satisfied by employing attorneys and interposing a defense in court. If that be the extent of the contract, it ought to be called an "Employers' Non-Liability Policy."

I believe the New Hampshire courts have rightly con· strued and enforced such a policy of insurance. In Sanders v. Frankfort & Marine Accident Plate Glass Company, 57 Atl., 658, 72 N. H., 485, the Supreme Court of that State, in construing a policy almost exactly like the one at bar, used the following language:

"In this case the insurance company undertook the investigation of the case, and, after suit was brought, assumed the entire defense by their counsel, and conducted the same to final judgment. The present action is not one respecting a loss by the insured under the policy. The defendant's contention that the assured has lost nothing because they have paid nothing, may, so far as the case is concerned, be conceded. The proceeding was not even to enforce the agreement of the policy to assume the liability, but the plaintiff's case stands upon the legal result of the assumption of liability by the company, because they assume—in legal effect, agreed to pay—the assured's liability to this plaintiff to the extent of $5,000. Equity requires them to perform their agreement by payment to him   *   *   *   The view that the contract means that the insurance company, after taking control of the proceedings in a suit against the assured, cannot thereafter be discharged except by payment of the indemnity to the assured or securing his discharge from the claim is thought to best conform to the intent of the parties, and is adopted."

This court has often recognized the doctrine that where one takes charge of the defense to an action, controls it, employs counsel, produces evidence, and pays the expense of the nominal party to the suit, he is bound by the judgment of record, although the record does not show him to be a party thereto. Schmidt v. L. C. & L. Ry. Co., 99 Ky., 143; Clark County v. Ecton, 150 Ky., 778; Heavrin v. Lack Malleable Iron Co., 153 Ky., 329.

The position I take is not unfair or inimical to the interest of the company. It certainly contemplated payment of the loss whenever liability is fixed on the employer. It has been paid to take that very risk. If insurer be relieved because the insured is unable to pay the loss, then a large per cent. of their policies are unenforcible, because they are held by insolvent people.

Judge Hannah concurs in this dissent.