[No. 10284. Department One. August 26, 1912.]

CHARLES F. FORD, *Respondent*, v. AETNA LIFE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, *Appellant*, JOHN GERRICK *et al.*, *Defendants*.[1]

INSURANCE—INDEMNITY INSURANCE — CONTRACT — CONSTRUCTION—ASSUMPTION OF DEFENSE—LIABILITY. A policy of indemnity insurance indemnifying an employer against loss "actually sustained and paid in money by him after actual trial of the issue," indemnities against loss only and not against liability, and is not enlarged by stipulations reserving to the company the right to defend the suit and the fact that the company assumed the defense.

FRAUDS, STATUTE OF—DEBT OF ANOTHER. Where an insurance company was liable on an indemnity policy only after actual payment of the judgment, the agent's oral promise to plaintiff to pay the judgment was the promise to pay the debt of another, and void as within the statute of frauds.

CONTRACTS—CONSIDERATION. A promise to pay one's own judgment is without consideration.

ESTOPPEL—EQUITABLE ESTOPPEL. Where judgment debtors were insolvent at the time judgment was entered and conditions did not change, a subsequent promise to pay the judgment by one who was garnishee therefor, does not estop the garnishee from denying liability to the judgment debtor.

GARNISHMENT—RIGHTS ACQUIRED. The plaintiff in garnishment acquires no better right to the debt than his debtor has.

PLEADING—DEPARTURE—GARNISHMENT. It is a departure for plaintiff in garnishment to seek recovery from the garnishee on the theory that the garnishee was indebted to the plaintiff.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered November 16, 1911, in favor of the plaintiff, upon withdrawing from the jury an issue in garnishment proceedings. Reversed.

*Post, Avery & Higgins*, for appellant.

*Merritt, Oswald & Merritt* and *Belt & Powell*, for respondent.

[1]Reported in 126 Pac. 69.

GOSE, J.—In 1910 the defendants Gerrick were engaged as contractors in doing the structural iron work on the Old National Bank building, in the city of Spokane. The plaintiff was working on the building, but not in their employ, and while so engaged was injured through their negligence. He thereupon commenced an action against them for damages, which terminated in a judgment in his favor for $2,476 and costs, on the 29th day of October, 1910. The Aetna Life Insurance Company, hereafter called the appellant, having theretofore issued to the Gerricks a casualty policy, assumed the defense for and in the name of the Gerricks. No part of the judgment has been paid.

On the 20th day of January, 1911, one of the attorneys for the plaintiff filed his affidavit for a writ of garnishment in harmony with the provisions of the code, Rem. & Bal., § 682 *et seq.* The affidavit alleges the recovery and nonpayment of the judgment; that the plaintiff has reason to believe, and does believe, that the appellant "is indebted to the above named defendants, and that it has in its possession and under its control personal property and effects belonging to the said defendants." On the same day, a writ of garnishment was issued, directed to the appellant as garnishee, commanding it to appear and answer upon oath "what, if any, you are indebted to said defendants and were when this writ was served upon you, and what effects, if any, of the said defendants you have in your possession or under your control, and had when this writ was served upon you."

In due time the appellant answered that it was not then, and was not when the writ was served upon it, indebted to the Gerricks in any sum, and that it did not then have, and did not have when the writ was served upon it, any of their effects in its possession. The plaintiff in reply alleged that prior to April 16, 1910, the appellant issued to the Gerricks "an employers' liability policy," insuring them against liability for damages up to the sum of $5,000, for any accident or injury to any one suffered through their negligence or the neg-

ligence of their employees; that on the date stated the Ger-
ricks were engaged in the erection of the Old National Bank
building in the city of Spokane; that on that day the plain-
tiff, while working on the building, sustained an injury
through the negligence of the Gerricks; that he thereafter
commenced an action against them to recover damages for
the injuries, which terminated in a judgment in his favor, on
the 29th day of October, for the sum of $2,476 and costs;
that the appellant employed counsel to represent them to
resist and contest the action, and that "about the time of the
entry of the judgment," the Gerricks became and have since
remained insolvent.

With the consent of the court, the appellant answered, ad-
mitted the issuance of a "casualty policy," set forth its terms,
and alleged that, before the commencement of the garnishment
proceedings, it settled with the assured all of its liability
under the policy. The plaintiff, in his amended reply to the
answer, alleged that he was threatening to enforce the judg-
ment against the Gerricks and the appellant, and that his
attorney "was informed by Vincent A. Hancock, auditor and
agent of the said insurance company and authorized to act
for and bind said company in the matter of the settlement of
said judgment, that said company would pay said judgment,
but that it would require two or three weeks to obtain the
money from the head office of said company in the east to
pay said judgment, and if plaintiff would take no steps to
collect or enforce said judgment said company would pay it
within two or three weeks;" that he relied on that statement,
and delayed taking any steps to enforce or collect the judg-
ment until the commencement of the garnishment proceed-
ings; that if the policy was settled, the settlement was made
without consideration and fraudulently, for the purpose of
preventing him from collecting or enforcing the judgment,
and that the appellant had knowledge at all times that the
financial condition of the Gerricks was such that the judg-
ment could not be enforced against them and knew that they

had no property on which execution could be levied. The appellant seasonably moved against all affirmative matter pleaded by the plaintiff subsequent to the original affidavit. There was a judgment for the plaintiff against the appellant, for the sum of $2,729.35 and costs. This appeal followed.

Mr. Powell, one of the attorneys for the respondent, testified that he went from Spokane to Seattle as a representative of the respondent, for the purpose of collecting the judgment against the Gerricks; that he there had a conversation with Mr. Hancock, the appellant's inspector and auditor, in which witness told him that he wanted the judgment paid; that he believed the appellant had to pay it; that "we" were expecting it to pay it; that "we" were going to collect it from the appellant or the Gerricks "one or both of them;" that it was "liable to pay it direct to us," and that Hancock finally said that, if witness would let the matter rest, "they would pay the judgment." The respondent relies upon this testimony and the provisions of the policy to sustain the judgment.

The policy runs direct to the Gerricks, and provides that, in consideration of the premium, the appellant "does hereby agree to indemnify the assured against loss . . . arising or resulting from claims upon the assured, for damages on account of bodily injuries . . . suffered . . by any person or persons not employed by the assured" by reason of the business covered by the policy. It provides that "the insurance is subject to the following conditions:"

"B.   If suit is brought against the assured to enforce a claim for damages covered by this policy, he shall immediately forward to the company every summons or other process as soon as the same shall have been served on him, and the company will, at its own cost, defend such suit in the name and on behalf of the assured.

"C.   The assured, whenever requested by the company, shall aid in effecting settlements, securing information and evidence, the attendance of witnesses and in prosecuting appeals, but the assured shall not voluntarily assume any liability or interfere in any negotiation for settlement, or in any

legal proceeding, or incur any expense, or settle any claim, except at his own cost, without the written consent of the company previously given, except that the assured may provide at the company's expense such immediate surgical relief as is imperative at the time of the accident.

"D. No action shall lie against the company to recover for any loss . . . or expense under this policy unless it shall be brought by the assured for loss . . . or expense actually sustained and paid in money by him after actual trial of the issue. . . .

"N. The company's liability for loss on account of an accident resulting in bodily injuries and ╱ or death to one person is limited to five thousand and no ╱ dollars ($5,000); and, subject to the same limit for each person, the company's total liability for loss on account of any one accident resulting in bodily injuries and ╱ or death to more than one person is limited to ten thousand & no ╱ dollars ($10,000). The company will, however, as provided in Conditions B and C hereof, pay the expense of litigation in addition to the sum herein limited and will also pay all costs taxed against the assured in any legal proceeding defended by the company, and interest accruing after entry of judgment upon such part thereof as shall not be in excess of the limits of the company's liability herein expressed."

Counsel for the respondent state their position as follows:

"It is our contention that, when the assured defends, the insurance is indemnity insurance; and when the company defends, the insurance is liability insurance. In other words, that, by defending and by taking entire charge of the litigation, the company assumes the payment of the judgment rendered against the assured, and condition D does not apply, and the insurance is changed from indemnity to liability insurance."

As we have stated, the appellant conducted the defense for the Gerricks in the suit wherein the respondent recovered the judgment against them. We cannot assent to the respondent's interpretation of the policy. The policy indemnifies against loss and not against liability. It seems quite clear that the liability in clause D, for loss "actually sustained

and paid in money by him after actual trial of the issue," is
not enlarged or changed by the stipulations in the preceding
clauses; but that a compliance with its terms is made a condi-
tion precedent to any right of action on the policy. In short,
the policy is one of indemnity against loss actually sustained
and paid in money by the assured, without regard to who as-
sumes the defense. In clause B the appellant reserved the
privilege and assumed the obligation of defending claims for
damages covered by the policy. But this does not imply that,
in the event the defense is unsuccessful, it will pay the judg-
ment. The question of payment is provided for in clause D.

This is the interpretation we put upon a similar policy in
*Puget Sound Imp. Co. v. Frankfort etc. Ins. Co.*, 52 Wash.
124, 100 Pac. 190, and *Sheard v. United States Fid. etc. Co.*,
58 Wash. 29, 107 Pac. 1024, 109 Pac. 276. The same con-
struction has been given to like policies in other jurisdictions.
*Finley v. United States Casualty Co.*, 113 Tenn. 592, 83 S.
W. 2; *Frye v. Bath Gas & Elec. Co.*, 97 Me. 241, 54 Atl. 395,
94 Am. St. 500, 59 L. R. A. 444; *Connolly v. Bolster*, 187
Mass. 266, 72 N. E. 981; *Clark v. Bonsal & Co.*, 157 N. C.
270, 72 S. E. 954; *Carter v. Aetna Life Ins. Co.*, 76 Kan.
275, 91 Pac. 178, 11 L. R. A. (N. S.) 1155; *Cayard v. Rob-
ertson & Hobbs*, 123 Tenn. 382, 131 S. W. 864, 30 L. R. A.
(N. S.) 1224; *O'Connell v. New York, N. H. & H. R. R.*, 187
Mass. 272, 72 N. E. 979; *Appel v. People's Surety Co.*, 132
N. Y. Supp. 200; *Conqueror Zinc & Lead Co. v. Aetna Life
Ins. Co.*, 152 Mo. App. 322, 133 S. W. 156.

In the *Finley* case the plaintiff, an injured employee of the
assured, recovered a judgment for personal injuries against
his employer, and thereafter filed a bill in equity against the
insurer, basing his right to recover upon two grounds; (1)
that the policy of his employer inured to his benefit, and (2)
that he had a right to impound the alleged debt in the hands
of the insurer and subject it to his judgment, because he as-
serted that a compromise, which the insurer had made with the
insured, was made for the fraudulent purpose of defeating the

collection of the judgment. The policy was identical in meaning with the policy in controversy. The court said, that the policy insured against loss only ; that no obligation arose until the assured had paid the loss ; that the policy was for the benefit of the employer and not for the benefit of his employee, and that the clauses in the policy similar to those relied upon by the respondent as fixing a liability were qualified and controlled by the clause in the policy similar to clause D in this policy.

In the *Frye* case, the intestate of an injured employee had recovered a judgment against the employer for damages for personal injuries. The defense of that suit was partially assumed by the insurer, and was conducted by its counsel in conjunction with counsel of the employer, under a clause in the contract of insurance which gave the insurer the right to defend such suits. The plaintiff thereafter filed a bill in equity against the insurer. It was held that the contract of the insurer was with the insured, to indemnify it "against loss," and that the policy was not obtained by the assured for the benefit of its employees, but for its own benefit exclusively, "to reimburse it for any sum that the company might be obliged to pay and had paid."

The *Carter* case was also prosecuted against the insurer by a bill in equity. The plaintiff, an employee of the assured, had recovered a judgment against the latter for personal injuries. The insurer had assumed control of the defense in the action in which the judgment was recovered. The court said that the contract was with the assured and not with the employee, and that the clause in the policy substantially identical with clause D "leaves no doubt of the intention of the parties, which was that the insurance company was not required to pay anything because of the policy until losses had been paid by the assured in satisfaction of a judgment." Commenting on the effect of the assumption of the defense for the assured, the court said:

"The fact that the insurance company made the defense

for the bridge company against plaintiff's claim for damages did not estop it from denying liability under its contract. The right to defend was specifically given by the contract, and this burden was assumed for the reason that the award to be made in the proceeding might ultimately be the measure of its own liability. To defend the action in behalf of the assured was in no sense an agreement to pay the plaintiff's judgment, and could not have misled the plaintiff. *Connolly v. Bolster, supra.*"

In the *Cayard, O'Connell, Appel,* and *Conqueror Zinc & Lead* cases, the company had assumed charge of the defense in the original actions, and a like conclusion was announced.

The respondent relies upon the view taken in *Sanders v. Frankfort etc. Ins. Co.,* 72 N. H. 485, 57 Atl. 655, 101 Am. St. 688. In that case the court held that the obligation of the company to "defend" suits brought against the assured and covered by the policy meant "to successfully defend," and that after final judgment payment is ordinarily the only defense. This view was criticised in *O'Connell v. Bolster, supra,* by the supreme judicial court of Massachusetts, and in *Cayard v. Robertson etc.,* by the supreme court of Tennessee, and is opposed to the great weight of authority. Moreover, it seems to us a strained construction of a contract that, in respect to the matters involved here, is entirely clear and unambiguous. The learned trial court said that he was disposed to follow the reasoning of the *Sanders* case, because it was fairer and less technical; and counsel argue that the construction there announced is in harmony with the principles of equity and justice. This depends altogether upon the point of view. The respondent has no rights in the policy, either legal or equitable. The policy was not written for his protection, but it was written for the purpose of indemnifying the insured against loss sustained and paid. Clause N does not militate against this view. The actual payment of the loss by the assured as provided in clause D is a condition precedent to the right in any one to maintain an action upon the policy.

The parol testimony is equally unavailing to the respondent. If Hancock made the promise, it is within the statute of frauds if it be treated as a promise to pay the debt of the Gerricks. On the other hand, if it be treated as a promise to pay a debt which the respondent was asserting against the appellant as he contends, there was no consideration to support it and the elements of estoppel are not present. The respondent in his first reply alleges that the Gerricks became insolvent "about the time of the entry of the judgment." This was October 29. The promise relied upon was made on December 12. The record is barren of evidence of any change in the financial condition of the Gerricks after that date. The plain implication, however, is that it did not change between those dates. The respondent's rights were in no wise affected or changed between the date of the promise and the date of suing out of the writ of garnishment. Under such circumstances, there is no estoppel established against the appellant. *Warder v. Baker*, 54 Wis. 49, 11 N. W. 342; *Sears v. Thompson*, 72 Iowa 61, 33 N. W. 364. As was well said in the *Warder* case; if the promise constituted a liability, "then the plaintiff ought to be permitted to plead in the first instance, not that the defendant owed him any debt, but that, previous to the commencement of the action, he had admitted his indebtedness, and, relying upon such admission, he brought his action to recover the same."

It is patent that, when the respondent sued out the writ and up to the time he filed his last and amended reply, he was relying upon an indebtedness due from the appellant to the Gerricks. He alleges the indebtedness in his affidavit, and in substance reasserts it in his reply to the first answer. It was only upon this theory that the statute gave him a right to the writ. Subject to exceptions not here present, the plaintiff in garnishment can get no better right to the debt garnished than his debtor has; and if the latter has no right in or to the debt, the former acquired none in the garnishment. *Bellingham Bay Boom Co. v. Brisbois*, 14 Wash. 173, 44 Pac.

153, 46 Pac. 238; *Allen v. Aetna Life Ins. Co.,* 145 Fed. 881; *North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co.,* 152 U. S. 596.

Moreover, the rule is well settled that the plaintiff cannot by a subsequent pleading introduce a cause of action different from that set forth in his complaint. *Clemmons v. McGeer,* 63 Wash. 446, 115 Pac. 1081. This rule means that the respondent could not sue out his writ upon the allegation that the appellant owed the Gerricks, and then recover upon the theory that it owed him. We have preferred, however, to rest the case upon the principle that the appellant's liability was to the assured only. It follows that no other can question the finality of the settlement.        .

The judgment is reversed, with directions to enter a judgment for the appellant.

MOUNT, PARKER, MORRIS, and CHADWICK, JJ., concur.