[No. 15714. *En Banc.* January 21, 1921.]

## C. P. FENTON *et al., Respondents,* v. JAMES WILLIAM POSTON *et al., Defendants,* MUTUAL UNION INSURANCE COMPANY, *Garnishee, Appellant.*[1]

INSURANCE (122)—LIABILITY FOR PERSONAL INJURIES OR DAMAGES INCURRED—INDEMNITY OR LIABILITY BOND. The bond of a compensated surety company was intended as a "liability" but not as an "indemnity" bond, where the bond was headed "liability bond" and was applied for as such, as provided by Rem. Code, § 5562-37, and the surety agreed to indemnify against loss from liability imposed by law upon the insured for damages "to any person" other than insured and their employees, and agreed to contest and defend any suits brought on the liability, and the bond contained no clause or any special conditions to the effect that no action shall lie thereon until the loss or expense shall have been sustained or paid (FULLERTON and MAIN, JJ., dissent).

SAME (122)—RISKS AND CAUSES OF LOSS—LAPSE OF POLICY—RELEASE. Where the premium in a liability bond was paid in advance at the time that a liability arose, the surety is liable although the liability was not established until after lapse of the policy, which expressly provided for a release only when the company is released from and has incurred no liability under the bond.

Appeal from a judgment of the superior court for Pierce county, Fletcher, J., entered September 2, 1919, in favor of the plaintiff in garnishment proceedings, after a trial to the court on the merits. Affirmed.

*W. R. Crawford* and *Remann & Gordon,* for appellant.

*Browder Brown* and *J. W. A. Nichols,* for respondents.

HOLCOMB, J.—The original action was brought by respondents, Fenton and wife, against defendants, Poston and Lamken and appellant, Mutual Union Insurance Company, to recover damages for injuries

[1]Reported in 195 Pac. 31.

received by Mrs. Fenton upon being run down by defendants' automobile in the city of Tacoma, on December 23, 1917. Plaintiffs alleged that defendants were operating this automobile for hire under a permit issued by the secretary of state, as provided by law, and for such purpose had filed with the secretary of state a bond with appellant as surety. Both defendants and appellant appeared by the same attorneys, defendants answering jointly, and appellant severally, the allegations of respondents' complaint. Thereafter the attorneys for defendants gave notice of withdrawal of their appearance for defendants in the cause.

Subsequently the case went to trial against defendants, but not against appellant, the action appearing to have been dismissed as to appellant; and, judgment for $3,500 having been rendered against defendants upon the verdict of a jury, respondents procured a writ of garnishment to be issued against appellant, asserting, in the affidavit filed to sustain the application for the writ of garnishment, that the judgment was unpaid and unsatisfied, and that appellant was indebted to defendants in the sum of $2,500, the amount of a bond issued by appellant to defendants under an application made October 29, 1917, the bond being in full force and effect at the time of the accident. Appellant made return to the writ, denying any indebtedness to the judgment debtors and averring that it had no property or effects belonging to them. In the garnishment proceedings, the court, sitting without a jury, gave judgment for respondents and against appellants for $2,400, the amount of the bond, less $100 representing unpaid premiums thereunder. From that judgment, the insurance company prosecuted this appeal.

The question presented by, and decisive of, the appeal, is whether the bond is one of indemnity or one of liability.

Although we held, in *Hadfield v. Lundin,* 98 Wash. 657, 168 Pac. 516, Ann. Cas. 1918C 942, that such a bond as was issued in this case did not comply with the statute, the company had, prior to the decision in that case, on October 29, 1917, issued and delivered to Poston and Lamken its bond, for a premium of $120, to be paid in monthly installments of $10 each, the first two of which were paid prior to the occurrence of the injuries to respondent Mrs. Fenton, and the installments payable subsequent thereto were not paid.

Poston and Lamken applied for the bond upon one of appellant's forms entitled, "Application for Liability Bond" in the "Penal sum of $2,500, as provided by Chapter 57, p. 227, of the Session Laws of 1915." The application commences with this language, which is also part of the printed form:

"The undersigned applicant, a member and policy holder of The Mutual Union Insurance Company, hereby applies to said company for a *liability* bond covering a *liability* within the corporate limits of the city of Tacoma on automobiles operated solely on what is known as the 'Army Post Route,' and to that end makes the following representations of fact . . ."

Language of the policy which is here material is as follows:

"The Mutual Union Insurance Company, in consideration of one hundred and twenty dollars ($120), and of the statements incorporated herein, which James William Poston and Louis Lamken make as warranties by the acceptance of this policy, and subject to the conditions hereinafter contained

"Does Hereby Agree

"1. To indemnify James William Poston and Louis Lamken, members of said company, against loss to

the amount of the penal sum of Twenty-five Hundred Dollars ($2,500), *from the liability imposed by law* upon said James William Poston and Louis Lamken, *for damages on account of all injuries which may be sustained by any person injured by reason of any careless, negligent or unlawful act on the part of said James William Poston and Louis Lamken, their agents or employees, in the conduct of the business of transporting passengers for hire in a motor propelled vehicle, or in the operation of a motor propelled vehicle used in transporting passengers for hire over or along any public street, road or highway,* within the corporate limits of the city of Tacoma, Washington (except that it is understood and agreed that this bond or contract shall not apply to injuries or death suffered or alleged to have been suffered by the said James William Poston or Louis Lamken or any employee or agent of said James William Poston and Louis Lamken).

"2. *To contest claims and to defend suits, even if groundless, made or brought against said James William Poston and Louis Lamken on account of such bodily injury or death,* unless the company shall elect to settle such claims or suits.

"The Foregoing *Agreement* Is Subject to the Following Conditions:

"Limits of Liability:

"The Company's liability under this policy shall be limited in the following manner:

"A.    That the liability of this Company shall be limited to the penal sum of Twenty-five Hundred Dollars ($2,500).

"B.    That the *liability* of this Company shall be limited to *any damage caused to any person* by the following described motor propelled vehicle to-wit: Trade Name Packard Type of body Touring:    Model 1911:    Year Bought 1917:    Factory No.          : Motor No. 15083; State License No. 92952: City Vehicle No. 294: Seating Capacity Seven Passenger.

"Assignment:

"C.    James William Poston and Louis Lamken can make an assignment of all their rights and in-

terests under the terms of this bond, or contract to the State of Washington, for and on behalf of any person that may be injured by them in the operation of said motor propelled vehicle used, as set out hereinabove in the transporting of passengers for hire. Such assignment when made will be duly accepted by the Company." [All italics ours]

The question as to the character of this bond is discussed in the briefs, and authorities are cited from this state and from other states. From our own state, appellant cites and relies upon the case of *Ford v. Aetna Life Ins. Co.*, 70 Wash. 29, 126 Pac. 69. There the plaintiff sued the defendants, who were the contractors for certain iron-work on a building in Spokane, on account of injuries he had received by reason of defendants' negligence during the course of plaintiff's employment by other parties on the same building. The defendants in that case thereafter became insolvent and the judgment was not paid; and the plaintiff procured the issuance of a writ of garnishment against the appellant in the case, an insurance company which had theretofore issued a casualty policy to the defendants. This policy contained a condition as follows:

"D. No action shall lie against the company to recover for any loss   .   .   .   .   or expense under this policy unless it shall be brought by the assured for loss   .   .   .   .   *or expense actually sustained and paid in money by him after actual trial of the issue*   .   .   .   ."

We there held that the policy indemnified against loss and not against liability, stating that a compliance with the terms of the clause quoted was a condition precedent to any right of action on the policy, and that there was no privity between the insurer and the judgment creditor.

There was no such condition in the policy now under consideration. Here the company substantially *agreed,* by the terms of the policy, to indemnify Poston and Lamken against loss from liability imposed by law upon them for damages "to any person," other than the insured themselves and their employees, on account of injuries sustained by reason of any negligent act on the part of Poston and Lamken and their agents and employees, in the conduct of their business of transporting passengers for hire in a motor propelled vehicle over any public street in the city of Tacoma.

Two conditions of the policy limited the liability of the company thereunder to $2,500, and to damage caused by the car therein described. There were no conditions or provisions, other than these, in the policy issued to Poston and Lamken, intended to limit the liability of the company.

The case of *Maryland Casualty Co. v. Peppard,* 53 Okl. 515, 157 Pac. 106, L. R. A. 1916E 597, is a case strikingly similar to the one at bar. That action arose out of an employer's liability policy of insurance which indemnified the assured,

"against loss from the liability imposed by law upon the assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered by any employee of the assured, . . . ."

The assured were engaged in certain construction work upon which one of their employees was killed by a fall from a scaffold. The widow of the deceased workman recovered a judgment against defendants which she was unable to collect, and she filed an affidavit of garnishment to the effect that the insurance company which had issued the policy was indebted to the defendants. The insurance company, as garnishee, contended that it was not indebted to the defendants, nor was it under liability to them; that the defendants,

being insolvent, had not paid out or lost anything by reason of the plaintiff's judgment against them; and that, if they, as the assured, had no right of action against the insurance company for the reason that the judgment had not been paid, consequently the plaintiff's action against the insurance company should fail. This contention was supported by the citation of numerous authorities from various states; and it is here significant that the case from our own state, *Ford v. Aetna Life Ins. Co., supra,* was one of the authorities cited. The supreme court of Oklahoma remarked that the policies in all of the cases cited contained the so-called "no action" clause, reading:

"No action shall lie against the company as respects any loss under this policy, unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after a trial of the issue."

And the court also said that, if the policies involved in the *Peppard* case had contained the "no action" clause, doubtless the preponderance of authorities would be in support of the contention of the insurance company. The court further said:

"The other side of the proposition (holding such a contract of insurance to be one of liability, rather than one of indemnity), however, even where the policies contain the 'no action clause,' is not without respectable support. [Citing leading cases.]

"So we find that, whilst there is considerable conflict in the authorities as to the proper construction to be placed upon policies containing the 'no action' clause, the construction of policies in all other respects similar, but not containing the 'no action' clause, has not been, in so far as we have been informed, often under consideration by the courts.

"From an examination of the opinions in the cases sustaining what may be called the majority rule (favoring the 'indemnity' holding) we are unable to say to

what extent the courts rendering them were influenced by the 'no action' clause in reaching their conclusions. However, if any of these cases hold that the phrase 'indemnify against loss from the liability imposed by law upon the assured for damages on account of bodily injuries,' standing alone, literally means 'indemnity against loss from the liability imposed by law upon the assured for damages on account of bodily injuries which have been actually paid or extinguished by the assured,' we cannot agree with them. 'Loss from liability' literally means loss which arises immediately upon one becoming liable to another, not loss which arises immediately upon such liability being paid or extinguished. 'Liability' is defined in Webster's New International Dictionary as 'that which one is under obligation to pay, or for which one is liable.' In our judgment, it is faulty reasoning which leads to the conclusion that one can suffer no loss if he is unable to pay that which he is under obligation to pay. . . . In view of all the circumstances surrounding transactions of this kind, we are of the opinion that it is more in harmony with right, justice, and reason, and the rules governing the construction of contracts of insurance, which are always prepared by the insurer, to hold that the policies before us indemnify the assured against liability.''

The court supported its holding by a number of cases: *Schambs v. Fidelity & Cas. Co. of New York,* 259 Fed. 55; *Patterson v. Adam,* 119 Minn. 308, 138 N. W. 281, 48 L. R. A. (N. S.) 184, and notes; *Blanton v. Kansas City Cotton Mills Co.,* 103 Kan. 118, 172 Pac. 987, L. R. A. 1918E 541.

The test as to whether this is a liability or an indemnity bond seems to be: If the intention of the parties thereto was to protect the assured from liability for damages, or to protect persons damaged by injuries occasioned by the assured as specified in the contract, when such liability should accrue and be imposed by law (as by a judgment of a competent court),

it is a liability bond; if, on the other hand, it is only to indemnify the assured against actual loss by them— that is, for reimbursement to them for moneys they had been obliged to pay and had paid, it would be an indemnity bond only, protecting only the assured. *Ford v. Aetna Life Ins. Co., supra; Davies v. Maryland Casualty Co.,* 89 Wash. 571, 154 Pac. 1116, 155 Pac. 1035, L. R. A. 1916D 395; *Stephens v. Pennsylvania Casualty Co.,* 135 Mich. 189, 97 N. W. 686. The last case above cited from our own court contains much reasoning apropos here.

Even though the bond involved herein did not comply with the requirements of Laws of 1915, p. 227, ch. 57, regulating the bonding and licensing of such public motor vehicles, it may still be a liability bond as contradistinguished from one of indemnity. In many, if not all, of the cases cited by appellant to establish this as an indemnity bond, the bonds contain some special condition, such as that numbered "D" in the *Ford v. Aetna Life Ins. Co.* case, *supra,* to the effect that no action shall lie against the insurer until the loss or expense shall have been actually sustained and paid in money. See, also, cases cited and quoted in above case. This bond contains no such special conditions. It is designated on its face by the party issuing it, "Liability Bond." The application was for a "Liability Bond." It was doubtless intended as such.

The object and purpose of the contracting parties is not to be lost sight of in construing a contract, nor is the rule that, in case of ambiguity, it must be resolved against the one who prepared the instrument. The language in the document before us was not the choice of the assured. It was such as was intended to win for the operator of the motor car a permit to carry passengers, for hire, on the specified route, doubtless

under the belief that it would protect passengers and others under the provisions of Laws of 1915, p. 227, ch. 57.

The language of the surety engagement is somewhat ambiguous. It speaks of *indemnifying* the insured *against loss* to the amount of $2,500, "from liability imposed by law." But it also specifies: "B. That the liability of this company shall be limited to any damage caused to any person by the following described motor propelled vehicle. . . . ." It also made an apparent attempt to so far comply with the provisions of Laws of 1915, p. 227, ch. 57 (Rem. Code, § 5562-37), as was intended to be approved by the secretary of state, by a provision for assignment by the assured to the state for and on behalf of any person negligently injured. The objects and purposes of the defendants called for that kind of insurance.

If we may assume that the assured vehicle owners were insolvent and could not respond in damages at any time during the term of the policy, then they could never "suffer any loss" to any one injured by them, and the policy would never have any effect or benefit other than to give rise to the payment of premiums to be retained by the so-called insurer. We will not consider that such was the sole object of the parties. Policies such as this should not be so construed as to be a delusion either to those who bought them, or to those who in good faith rely upon them.

From the foregoing considerations, we conclude that this bond must be construed as one of liability for any liability imposed by law, and that respondent's judgment against defendants is clearly such a liability.

Appellant further contends that the bond in question had been canceled before any action was instituted and liability established by non-payment of premiums.

We cannot assent to that contention. The premium was, by agreement, to be paid in installments of ten dollars each, in advance, per month. The installment due November 29, 1917, was paid and the injury occurred on December 23, 1917, the third installment not then being due. The payment of November 29, *in advance,* continued the policy in force until December 29, 1917. The application for the bond conditioned the cancellation for non-payment of premiums as and when due "provided the company is released from and has incurred no liability under the bond, otherwise the remaining installments are due and payable." Under the last clause of the foregoing provision, the trial court offset the remainder of the unpaid premiums, to which respondents made no objection, and we do not think appellant can complain. Certainly a compensated guarantor will not be released from the guaranty after a liability covered by its engagement has accrued, although not established by law until after the lapse of the policy for non-payment of partial premiums.

The judgment is affirmed.

PARKER, C. J., MOUNT, MITCHELL, TOLMAN, MACKINTOSH, and BRIDGES, JJ., concur.

FULLERTON, J. (dissenting)—As stated in the majority opinion, the question for determination is whether the bond in controversy is one of indemnity or one of liability. The conclusion that it is one of liability is rested, if I have correctly gathered the purport of the opinion, on two separate grounds: first, that the bond was intended by the parties to be the statutory bond, prescribed by Laws of 1915, p. 227, ch. 57, and being so intended will be so held as between the insurer and the insured and between the insurer and a third person, notwithstanding it may be lacking

in some or in all of the essentials prescribed by the statute for such a bond; and second, that the language of the bond itself, properly interpreted, denominates the bond as one of liability rather than one of indemnity. With neither of these contentions can I agree.

The facts are simple. On and prior to the time of the execution of the bond in controversy, the defendants, Poston and Lamken, were operating an automobile stage over a route extending from a place near the business center of the city of Tacoma to the army post known as Camp Lewis, carrying passengers for hire. A part of the route passed over the streets of the city of Tacoma. That city is a city of the first class, and by the statute cited, it is made unlawful for any person to carry passengers for hire upon the streets of any city of the first class in a motor propelled vehicle without first obtaining a permit from the secretary of state so to do. To obtain the permit, the carrier is required by the statute cited (Laws of 1915, p. 228, ch. 57, § 2) to

"deposit and keep on file with the secretary of state a bond running to the State of Washington in the penal sum of twenty-five hundred dollars, with good and sufficient surety company licensed to do business in this state as surety to be approved by the secretary of state, conditioned for the faithful compliance by the principal of said bond with the provisions of this act and to pay all damages which may be sustained by any person injured by reason of any careless, negligent or unlawful act on the part of said principal, his agents or employes in the conduct of said business or in the operation of any motor propelled vehicle used in transporting passengers for hire over or along any public street, road or highway, and shall pay to the secretary of state a fee of five dollars . . . ."

Poston and Lamken were operating their automobile without a permit from the secretary of state. They

were unable to obtain a statutory bond. No licensed
insurance company would then issue such a bond. This
because, so it was stated in the argument at bar, of
the decision of this court in *Salo v. Pacific Coast Cas-
ualty Co.*, 95 Wash. 109, 163 Pac. 384, L. R. A. 1917D
613. In this situation, they applied to the appellant
company for a bond and that company issued to them
the bond in suit. The appellant was not then a licensed
company and could not issue the statutory bond had
it so desired. It had theretofore applied for a license,
it is true, but a license had been denied it by the state
officer empowered to issue such licenses, and this court,
in an opinion handed down less than two months prior
to the issuance of this bond, had sustained the officer in
his refusal. See *State ex rel. Mutual Union Ins. Co. v.
Fishback*, 97 Wash. 565, 166 Pac. 799. Nor is there
anything in the record that indicates that Poston and
Lamken did not fully understand and appreciate the
situation. There is no evidence that they applied to
the secretary of state for a permit on the strength of
the bond, and it is in evidence that they paid the de-
ferred installments on the insurance premium as long
as they continued to operate their stage. Nor is either
Poston or Lamken here contending that the bond was
the statutory bond. This contention is made on their
behalf by the garnishee plaintiffs, who are neither par-
ties nor privies to the contract, and whose sole interest
in so doing is the hope that they may profit thereby.

But stress is laid on the language of the bond as
tending to support the conclusion that the bond is a
statutory bond. I cannot so read it. The bond (bar-
ring the italics, which are supplied by the majority) is
correctly copied in the main opinion. It contains no
reference to the statute. It does not run to the state
of Washington. It contains no condition for the pay-

ment of damages to any person injured by the careless, negligent or unlawful act of the operators of the automobile. On the contrary, it purports on its face to be a contract between private persons, by which the one agrees to indemnify the other against loss from liability arising from certain defined causes.

Again, the opinion also contains statements from which it can be gathered that the majority conclude that it would operate as a fraud on the insured and on the injured person, if the bond is not construed as a statutory bond. In the opening paragraph of the opinion, it is pointed out that the plaintiffs alleged in their complaint that the defendants Poston and Lamken were operating the motor car under a permit issued by the secretary of state and had filed a bond with the secretary on which the appellant was surety, and later on it is said that "Policies such as this should not be so construed as to be a delusion either to those who bought them, or to those who in good faith rely upon them . . . ." But the majority should remember that allegations in a complaint, denied and unproven, avail nothing. It is perhaps unnecessary, but I may add that the plaintiffs sued the insurance company jointly with Poston and Lamken, and that this allegation was thought necessary to charge the former. Doubtless they thought the allegation true when it was inserted in the complaint, but afterwards, discovering their mistake, they consented to a dismissal of the action as against the company. The intimation that to construe the bond as other than the statutory bond would render it a "delusion" to the insured and the injured plaintiff is likewise unfounded. The insured, as I have hereinbefore pointed out, fully understood the nature of the bond and accepted it, so understanding it. There could be no fraud or deceit in its issu-

ance as to them. The injured plaintiff could in no man-
ner be deceived or affected thereby. No contractual
relation existed between her and Poston and Lamken
at the time of the injury. She was not a passenger on
the automobile. On the contrary, she was injured at
about midnight, while walking in the roadway of a
paved street, directly in the path of oncoming vehicles,
although unobstructed walks in good condition, pre-
pared especially for pedestrians, existed on each side
of the street.

I cannot think, therefore, that there is any justifica-
tion in the record for the statement of the majority,
that the bond "was such as was intended to win for
the operator of the motor car a permit to carry pas-
sengers, for hire, on a specified route," or the state-
ment that "it also made an apparent attempt to so far
comply with the provisions of chapter 57, Laws of
1915, as was intended to be approved by the secretary
of state, . . . ." It seems to me that the bond
was nothing more than a contract between private in-
dividuals, in no way subserving a public function, as
does the statutory bond.

The second question, in my opinion, presents the
debatable issue in the case; and on this I think the ma-
jority clearly wrong if our prior decisions in kindred
cases are to be followed. Turning to the bond, it will
be observed that the insurer agrees to "indemnify"
the insured "against loss . . . . from the
liability imposed by law" on the insured, arising from
certain stated causes. The indemnity, it will be
noticed, is not against "liability" arising from the
stated causes, but is an indemnity against "loss from
liability" so arising. It is this distinction that the
majority seem to overlook, and it is the distinction
which, in my opinion, renders the bond one of in-

demnity rather than one of liability. To prove this point, it would seem enough merely to cite the majority opinion at the place where the distinction between an indemnity and a liability bond is pointed out. Clearly the agreement here "is only to indemnify the assured against actual loss by them," and this by the terms of the definition given is an indemnity and not a liability bond. The adjudicated cases which I think support the contention are *Puget Sound Imp. Co. v. Frankfort etc. Ins. Co.*, 52 Wash. 124, 100 Pac. 190; *Sheard v. United States Fid. & Guar. Co.*, 58 Wash. 29, 107 Pac. 1024, 109 Pac. 276; and *Ford v. Aetna Life Ins. Co.*, 70 Wash. 29, 126 Pac. 69.

The last of these cases is cited by the majority and distinguished from the case in hand, because of the somewhat more definite language of the bond. While the distinction pointed out seems to me to be unfounded, I need not stop to discuss the reason for my conclusion. The second of the cited cases is equally emphatic in declaring the bond there in question to be an indemnity rather than a liability bond, and the bond contains none of the language thought to be distinguishing. The language of the obligatory clause of the bond was to "well and truly indemnify and save harmless the said obligee from any pecuniary loss, resulting from the breach of any of the terms, covenants, and conditions" of the contract for which the bond was given as a guaranty. We held this to be an indemnity and not a liability bond, using this language:

"The bond does not oblige the obligors to pay legal liabilities, but to indemnify the appellant (the obligee) for any pecuniary loss he may sustain from a breach of the contract; and in view of this provision, we agree with the appellant that it is an indemnity against liability for damages, and that the cause of action did

not accrue until the damages were judicially determined and actually paid."

Reference is made to the case of *Davies v. Maryland Casualty Co.*, 89 Wash. 571, 154 Pac. 1116, 155 Pac. 1035, L. R. A. 1916D 395, with the remark that it "contains much reasoning apropos here." For my purposes I need but say that the case does not overrule the cases I have cited.

The bond, therefore, being one of indemnity against loss rather than one of indemnity against liability, there should be no recovery on the part of the garnishee plaintiffs. These plaintiffs, since they are not in privity of contract with either of the parties to the bond, cannot be substituted for the obligees therein. They can recover only in the case of an actual indebtedness owing by the insurance company to the obligees. This we held in *Bellingham Bay Boom Co. v. Brisbois*, 14 Wash 173, 44 Pac. 153, 46 Pac. 238, where we said:

"The garnisher can get no better right to the debt garnished than his debtor has, and if the latter has no right in or to the debt, the former acquires none by his garnishment."

See, also, to the same effect *Ford v. Aetna Life Ins. Co., supra.*

There was no such indebtedness here existing. The obligees suffered no loss within the condition of the bond. They have neither paid nor been forced to pay the judgment against them.

The judgment should be reversed.

MAIN, J., concurs with FULLERTON, J.