[No. 17611.  Department One.  May 14, 1923.]

# W. J. McKenna, *Respondent*, v. International Indemnity Company, *Appellant*.[1]

INSURANCE (122)—INDEMNITY INSURANCE—DAMAGES INCURRED OR "PAID IN MONEY"—EXECUTION SALE. Judgment having been procured against the insured for an automobile collision, the legal effect of an execution and sale of insured's property to the judgment creditor in satisfaction is the same as a "payment" of the judgment, within the meaning of an indemnity policy providing that the insured shall not be reimbursed except for loss actually sustained and "paid by him in money"; hence, in an action on the policy, proof of such sale was not upon a collateral inquiry.

SAME (123)—INDEMNITY INSURANCE—EXPENDITURES—ATTORNEY'S FEES. The prepayment of attorney's fees and expenses incurred by insured at the trial, upon the company's refusal to defend the case as the policy required it to do, is not a condition precedent to an action upon an indemnity policy, requiring prepayment of a judgment before the insured is reimbursed, where the policy is silent as to the prepayment of expenses and attorney's fees.

SAME (123)—INDEMNITY INSURANCE—NOTICE OF ACCIDENT—EVIDENCE—ADMISSIBILITY. It is no defense to an action upon an indemnity policy that the insured failed for two months to give notice of an accident, the policy requiring immediate written notice, where the accident appeared too trivial to cause any damage and the injured person, at the time, stated to the insured that he was not hurt and that it was his own fault, and insured had no notice of an injury or claim until the service of summons and complaint upon him.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered June 28, 1922, upon the verdict of a jury rendered in favor of the plaintiff, in an action on an indemnity policy. Affirmed.

*Danson, Williams & Danson (R. E. Lowe*, of counsel), for appellant.

*Allen, Winston & Allen*, for respondent.

MITCHELL, J.—This action was brought by W. J. McKenna to recover on an indemnity policy of insur-

[1] Reported in 215 Pac. 66.

ance issued by the International Indemnity Company, covering the use of an automobile owned by the plaintiff. While the policy was in force, an accident occurred whereby one Campbell was injured while the plaintiff was using the automobile. Campbell sued McKenna and wife on account of the accident. The defense in that suit was tendered to the indemnity company and declined by it. There was judgment in that case in favor of Campbell in the sum of $1,250, together with costs amounting to $88.70, and this suit was brought to recover over the amount paid on the Campbell judgment, together with the expenses incurred in defending the suit, together with interest. There was a verdict and judgment for the plaintiff, from which the defendant has appealed.

We dispose of the assignments of error by grouping them out of their numerical order, after the fashion adopted by appellant. Assignments, 1, 2, 3, 6, 8, 9, 11, 12, 20 and 21 relate to the introduction of evidence of the verdict, judgment, execution sale and confirmation of sale in the Campbell case; refusal to strike the testimony; an instruction given thereon; the refusal of the court to give one thereon requested by the appellant; and the attorney's fee respondent incurred in defending against the Campbell suit.

After Campbell obtained his judgment, he caused an execution to issue against McKenna and wife, upon which real property of the debtors was sold to Campbell in the sum of $700. The argument is that the sale was foreign to the present case because of the provision in the insurance policy to the effect that the company shall not be called upon to reimburse the assured for anything paid on a judgment against him except that the loss has been actually sustained and "paid in money" by him. Certainly the respondent

sustained an actual loss of $700 when his property was sold on the execution sale; and because the statute, § 590, Rem. Comp. Stat. [P. C. § 7900], provides that the sheriff shall strike off the land to the highest bidder, who shall forthwith pay the money to the officer, who shall return the money with his execution to the clerk from which the execution issued, it must be held that the legal effect of the sale where the judgment creditor becomes the purchaser is a cash sale, and must be treated in this case as a cash payment by the assured, under a reasonable construction of the terms of the insurance policy. Proof of the sheriff's sale introduced no more of a collateral inquiry as to whether or not the respondent sustained an actual loss and the amount of it than would an allegation and proof by respondent that he had paid that amount in actual money to Campbell, and that is the sense and purpose of that clause in the policy.

These assignments relate also to certain expenses incurred and partly paid out, including an attorney's fee, by the respondent in the Campbell suit. It is argued there can be no recovery on the policy for these items of expense unless they have been actually paid by the respondent, and the cases of *Ford v. Aetna Life Ins. Co.*, 70 Wash. 29, 126 Pac. 69, and *Luger v. Windell*, 116 Wash. 375, 199 Pac. 760, are cited.

The *Ford* case was an action on a casualty policy that contained a clause to the effect that no action should lie against the company to recover for any loss or *expense* unless brought by the assured for loss or expense actually sustained and paid in money by him after the actual trial of the issue. In the present case, the policy is silent as to the necessity for the payment of expense money as a condition to recovery on the policy, and there should be no doubt of the right to

recover it upon the refusal by the company to accept the defense of the suit tendered to it promptly by the respondent, under the agreement in the policy that the company would defend such action. The *Luger v. Windell* case, *supra,* does not discuss this particular question, but is devoted to a determination of the question whether or not the policy in that case was one of liability or indemnity, and relies largely on the *Ford* case for the conclusion reached.

In the present case, concerning the item of attorney's fee, it is specifically urged by the appellant that "the test is the reasonable value of services performed and not the amount paid or agreed to be paid." The record shows, however, that Mr. Jones, who represented the respondent in the Campbell suit, testified to the attorney's fee now in controversy, and that later the respondent testified similarly as to the amount of it and the portion thereof already paid. Thereupon, in answer to a question by the court concerning the state of the proof as to the reasonableness of the fee, counsel for respondent answered: "Mr. Jones testified to that. If there is any question about it I will have to recall him," whereupon counsel for appellant stated: "I think he has." The amount allowed for that purpose in the judgment is within that proof.

Assignments 4 and 5 refer to the court's permitting respondent to testify as to the conversation by telephone had by him with a clerk in the office of Arthur D. Jones & Company, as agents of the appellant, the day after the accident. Assignment number 10 is presented because of the court's refusal to withdraw that evidence from the jury. The objection in part is that the conversation was with a clerk instead of the manager of the company. However, the respondent testified in that same connection that afterwards, in his

presence, the clerk stated to him, in the presence of the manager of Arthur D. Jones & Company that she was the one who received the telephone message and that she delivered it to the manager. The manager made no denial of that statement by his clerk. In this connection it is argued also that the testimony was insufficient to show that Arthur D. Jones & Company were agents of the appellant, but without reciting the evidence, we are entirely satisfied that it, together with the pleadings, are entirely sufficient to show it to be a fact that they were the local agents of the company.

Assignments 14 and 15 relate to the refusal of the court to give a requested instruction that oral notice of an accident was not sufficient, and that there was no evidence that appellant had waived the giving of written notice. The refusal to give such instructions was without prejudice, as will appear from our conclusion upon other assignments to be discussed later herein. What has just been said of assignments 14 and 15 is applicable to assignment 13, which relates to the refusal of a requested instruction as to the validity of the provision of the policy for immediate written notice of an accident.

Assignments 7, 16 and 17 relate to the refusal of the court to sustain appellant's challenge to the sufficiency of respondent's evidence, and to give requested instructions that there was no evidence of sufficient excuse for failure to give immediate written notice of the accident, and that the notice which was given was not within the time required by the policy. Assignments 18 and 19 question instructions given concerning the sufficiency, as to time, of written notice given by the respondent after he became aware that Campbell claimed damages, and of the delivery to the local agents of the company of a copy of the summons and complaint against him in the Campbell suit. These

five assignments may be considered together and require, first, a reference to certain portions of the policy, and then a somewhat detailed account of the accident and of the subsequent occurrences relating thereto.

The policy was countersigned and delivered at Spokane, the scene of all the transactions involved. Paragraph numbered 2 of the policy reads as follows:

"Every notice or communication to the Company shall be in writing and given at the office of the Company at which this policy is issued, or to the Company's duly authorized agent at the place where this policy is countersigned."

Paragraph 4 of the policy provides:

"Upon the occurrence of any accident covered by this policy, the insured shall give immediate written notice thereof to the company   .  .  ."

The accident occurred on a rainy evening, about dark, on a well lighted street intersection, on September 17. Respondent with his wife and son were in the automobile on their way to a show nearby. On approaching the crossing, the automobile was practically stopped a moment to accommodate pedestrians, and then, upon moving slowly, about two miles an hour, Campbell, protected by a raised umbrella, stepped off the sidewalk in front of the car. Respondent shouted to him. The son who was driving "killed" the car. Campbell threw up his umbrella and fell, and then, as respondent testified:

"I jumped out and went over to him, and he was up when I got to him, and I asked him if he hurt himself, and he said, 'No' and I said 'Didn't you see the car?' and he said 'No, I didn't.'   .  .  .   He told me that he wasn't hurt, and after we talked a while he said 'It was my own fault. It will teach me a lesson the next time I am crossing a street to look where I am going.'"

In cross-examination, the respondent said that, when he shouted, Campbell threw up his umbrella, stepped backwards and fell down, and in the conversation that followed, Campbell said he was not hurt, but that "He knocked some skin off his leg." This account of the accident is strongly corroborated and in no way disputed.

After the show was over, the son told his father of a rumor, just heard, that a man had been run over by an automobile at the place in question, and that the driver had fled without giving assistance or making inquiry. Thereupon the respondent called up the police headquarters and was informed by a captain of the department that Campbell, an old friend of his, was the person involved; that he had been to headquarters and to the emergency hospital and that he was not hurt. The next morning the respondent met the person who had acted as local agent in the sale of the policy of insurance and told him he came near having a damage suit last night, that a man stepped in front of his car and fell down, and if the car had been going faster than two miles an hour he might have been hurt, but, as it was, he wasn't hurt, and that the man claimed it was his own fault. The person addressed stated that he was no longer agent for the company, that Arthur D. Jones & Company were the local agents, and then it was that respondent had the telephone conversation with the agents already referred to, telling them in substance the same as he had stated to the former agent, and at the request of the office he gave them his telephone address, being advised that he would be called up if they wanted to speak with him further.

Thereafter the respondent learned nothing whatever of the matter until November 10, at which time the

summons and the complaint in the Campbell suit were served on him. On the next day he delivered summons and complaint to the local agents at their office, and at the same time made out a formal written report of the accident, at the request and under the directions of the local agent. There is no question as to the sufficiency of that report so far as its contents are concerned. The summons and complaint were delivered by the agents to the attorneys for the company, who, in consultations with the respondent and his attorneys, agreed to defend in the Campbell suit upon conditions not disclosed by the record before us. The conditions being declined, the company refused the defense.

Such a lengthy description of the accident and the subsequent relations of the parties appears to be unwarranted other than to develop the outstanding controlling feature that the injury was a trivial one. It was so stated to be by the one injured, and treated as such by all the parties interested. The record is silent as to when and how the injury developed into sufficient pretensions to justify the Campbell suit, but certainly not within the knowledge of the respondent and his wife until the summons and complaint were served on them, some two months after the accident. Under the circumstances, we think the insured should not be penalized by the loss or forfeiture of his insurance. The modern cases appear to so hold.

In the case of *National Paper Box Co. v. Aetna Life Ins. Co.*, 156 S. W. (Mo.) 740, which was a suit on a liability policy that provided that, upon the occurrence of an accident, the assured shall give immediate written notice thereof, with the fullest information obtainable, to the home office or its duly authorized agent, the court said:

"An injury might be of such character as to afford, at first, no reasonable ground for thinking that it might support a claim for damages against the employer. In such case we think the assured would not be required under the reasonable rule of construction we are discussing to give the assurer notice until such time as the facts of the injury and its progress began to suggest to a person of reasonable care and prudence that a possible liability of the assured to answer in damages lurked in them.

"Frequently an injury apparently too trivial to cause any damage or inconvenience develops into a most serious phase. The duty of the assured in such instances with respect to giving notice is performed if he gives notice within a reasonable time after the injury first takes on a serious aspect, an aspect suggestive of a possible claim for damages."

The case of *Chapin v. Ocean Accident & Guaranty Corp.*, 96 Neb. 213, 147 N. W. 465, 52 L. R. A. (N. S.) 227, was an action to recover upon an automobile indemnity insurance policy which contained the familiar clause requiring immediate written notice to the head office, or to one of its duly authorized agents, of all accidents. The automobile collided with a person on a bicycle. The insured at once interviewed him and was told that he was not hurt. Some months afterwards the insured was notified that the person was suffering from a species of paralysis that was traceable to, and caused by, the fall at the time of the collision. Then the insured made a written report of the accident, giving full information. The company refused to defend the suit brought by the injured party for the reason that notice had not been given of the collision at the time it happened. The same defense was interposed when the company was later sued by the insured, who had paid the party injured. In discussing the defense, the court said that the provision in the policy requiring immediate written notice to be given is not unrea-

sonable, and called attention to the fact that many courts, citing cases, construe such provision strictly in favor of the insurer.   But, said the court, the principle of strict construction of the clause does not cover or determine the question presented in the case.   After stating generally that an insurance contract, like any other, must be reasonably construed, it was in effect held that the accident at the time it occurred, did not appear to be such an accident as was within the clause requiring immediate written notice to be given of it. The court said:

"To illustrate:   Suppose that in carelessly closing the door of the automobile the man in charge should inflict a slight or trivial bruise upon a passenger or bystander, of which no present external indication appeared, and as to which the individual disclaimed any injury; or suppose that the finger of such a one was pricked or his skin abrased in some manner, resulting from the use of the automobile—would the policy make it imperative that immediate notice of such occurrence should be given, upon the penalty of a loss or forfeiture of the insurance in case an injury later developed? We cannot take this view.   If no apparent injury occurred from the mishap, and there was no reasonable ground for believing at the time that bodily injury would result from the accident, there was no duty upon the assured to notify the insurer."

The court cites with approval and quotes from the case of *National Paper Box Co. v. Aetna Life Ins. Co., supra.*

The *Chapin* case was later followed in the Nebraska case of *Midland Glass & Paint Co. v. Ocean Accident & Guarantee Corp.,* 102 Neb. 349, 167 N. W. 211, which related to an accident of which the court said:

"In the case at bar it clearly appears that no one had any idea that a claim for damages would ever result therefrom.   Indeed, Earl himself at all times stated that he was not hurt and the abrasion on his

finger was so slight that it never interfered with his work.''

About the date of the last cited Nebraska case (1918), the court of appeals of New York decided the case of *Melcher v. Ocean Accident & Guarantee Corp.*, 226 N. Y. 51, 123 N. E. 81. It was an action on a policy containing the ''immediate notice'' clause. The court held:

''It is not every trivial mishap or occurrence that the assured under such a policy of liability insurance must regard as an accident of which notice should be given immediately to the insurance company, even though it may prove afterwards to result in serious injury.''

The court cited and quoted with approval from the *Chapin* case, *supra*. The reason of these cases is applicable to the present case, and was followed in the trial of it.

Without some thoughtful observance, it might appear that our conclusion is somewhat at variance with the case of *Deer Trail Consolidated Min. Co. v. Maryland Casualty Co.*, 36 Wash. 46, 78 Pac. 135. However, an examination of that case shows that it turned upon the question of the waiver of immediate notice, as contended for by the assured. It in no way considered or discussed the question of the sufficiency of the injury, as it reasonably appeared to all the parties at the time it happened, to raise it to the dignity and character of accidents required to be immediately reported under the terms of the policy.

Our conclusion is that respondent's loss entitled him to recover, and that the case was fairly tried.

Affirmed.

MAIN, C. J., HOLCOMB, BRIDGES, and MACKINTOSH, JJ., concur.