[No. 23461. Department One. March 7, 1932.]

GERDA LARSON, *Respondent*, v. NEW JERSEY FIDELITY & PLATE GLASS INSURANCE COMPANY, *Appellant*.[1]

*Roberts, Skeel & Holman* and *Frank Hunter*, for appellant.

*James R. Gates*, for respondent.

PARKER, J.—The plaintiff, Miss Larson, commenced this action in the superior court for King county seeking recovery from the defendant insurance company, upon an automobile accident liability insurance policy issued by it to Harold Langdon, the owner of the automobile, as the named principal beneficiary thereunder. Miss Larson's claim is rested upon the theory that,

[1]Reported in 8 P. (2d) 985.

she being the person injured by the accident in question and having an unsatisfied judgment against a beneficiary under the policy for damages suffered by her as the result of that injury, she has become subrogated to his insured rights against the company; and also upon the theory that she is the assignee of all the rights of the beneficiaries thereunder.

Trial of the cause in the superior court, sitting with a jury, resulted in verdict and judgment awarding to Miss Larson recovery in the sum of $677.85 against the company, from which it has appealed to this court.

The principal, controlling facts, as the evidence seems to us to have warranted the jury in viewing them, we think, may be fairly summarized as follows: The policy in question was duly issued by the company covering the period of one year from March 12, 1929, to March 12, 1930. It reads, in so far as need be here quoted, as follows:

"The Company hereby agrees to indemnify the herein named Assured against loss from the liability imposed by law upon the Assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered within the policy period by any person or persons not hereinafter excepted by reason of the ownership, maintenance or use of any of the automobiles enumerated and described in the Schedule.

. . . . . . . . . . .

"To defend in the name and on behalf of the Assured any suits, even if groundless, brought against the Assured to recover damages on account of such bodily injuries as are described above unless the Company shall elect to effect settlement thereof.

. . . . . . . . . . .

"The liability of the Company, whether there be one or more Assured, for loss from an accident resulting in bodily injuries to or in the death of one person only is limited to Five Thousand Dollars ($5,000.00)

. . .

"The insurance provided by the policy is so extended as to be available, in the same manner and under the same conditions as it is available to the named Assured, to any person or persons while riding in or legally operating any of the automobiles described in the Schedule, and to any person, firm or corporation legally responsible for the operation thereof, provided such use or operation is with the permission of the named Assured, . . .

"The insolvency or bankruptcy of the Assured shall not release the Company from the payment of damages for injuries sustained or loss occasioned during the term of the policy, and in case execution against the Assured is returned unsatisfied in an action brought by the injured, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, an action may be maintained by the injured person, or his or her personal representative, against the Company under the terms of the policy for the amount of the judgment in the said action not exceeding the limits of the policy.

"The Assured shall give to the Company or to its duly authorized agent immediate written notice of any accident with the fullest information obtainable. The Assured shall give like notice of claims for damages on account of such accident. . . ."

The schedule endorsed upon the policy names Harold Langdon as the principal beneficiary, and describes his automobile with reference to which the policy is issued.

Langdon, the beneficiary named in the policy, and Lester Martain were intimate friends, living in Seattle at the time of the accident in question, keeping their respective automobiles in the same garage. On April 23, 1929, in the morning, Langdon loaned his automobile, the one with reference to which the policy was issued, to Martain to drive to his daily work, Martain's automobile being temporarily disabled. Accordingly, Langdon's automobile was driven by Martain to his

place of work, his route being through the business section of the city. He drove south along Third avenue. When he came near the south pedestrian crossing of Union street on Third avenue, the front of the automobile came in contact with a lady, who, Martain thereafter learned, was Miss Larson. What there occurred, he describes in his testimony as follows:

"Q. State to the jury how fast you were going, and the manner in which Miss Larson was struck, and what she did after the accident. A. I was going south on Third Avenue. I don't know just exactly now how fast I was going, but it was somewhere around twenty, I guess, and I saw Miss Larson start across the street, and I was about the middle of the street. I started to stop, and just as I bumped her—well, I did stop—she didn't fall clear down, just about half way, and she grabbed the motormeter, and then she jumped up and ran for a street car, and I drove on out of the traffic and stopped again, but she was gone then. So I went on to work. Q. Did you think she was hurt to any extent, or at all? A. No; I didn't think she was hurt at all, she ran so fast when she got up."

This version of the accident and Miss Larson's suddenly running away to the street car was corroborated by her own testimony.

Martain soon thereafter made report of the accident to the city police department, as he assumed it to be his duty to do, though he regarded the accident as of no moment in so far as injury to Miss Larson was concerned. Langdon was told of the accident the next morning. The Seattle agency of the company learned of the accident soon thereafter, but not by formal notice as prescribed by the last above quoted paragraph of the policy. Thereafter, neither Langdon nor Martain were advised of any serious injury resulting to Miss Larson from the accident until November 5, 1929, when Langdon received a letter from Miss Larson's attorney, reading as follows:

"Miss Jarda Larson, of this city, was injured at the intersection of Union street and Third avenue, this city, on April 23rd last, due to the operation of your Buick sedan. She has suffered some considerable injuries and hospital and doctor bills and loss of time. I will be pleased to have you communicate with me in reference to an amicable adjustment of her damages."

Soon thereafter, the Seattle agency of the company was advised by Langdon of the receipt of this letter, it being then left with the agency. He was then or soon thereafter advised by the agency that it disclaimed liability under the policy because of failure of any beneficiary thereunder to give to the company timely notice of the accident following its occurrence, there having been no formal notice of the accident given to the company up to that time.

Soon thereafter, Miss Larson commenced an action in the superior court for King county against Langdon and Martain, seeking recovery from them of damages for personal injuries claimed to have been suffered by her as the result of the accident. The defense of that action was promptly tendered to the company, and soon thereafter the attorneys for the company wrote to Langdon, advising him with reference to the accident, in part, as follows:

"We have just received two letters from New Jersey Fidelity & Plate Glass Insurance Company, which instruct us to positively advise you that because of the delay of notice of the accident to Miss Larson and for other reasons, that company disclaims all liability under its policy covering the Buick sedan involved in this accident. This means that, while the company will accord to you the services of its attorneys in investigating and defending the suit, yet the company, for the reasons assigned, does and will refuse to pay any judgment that may be rendered against you in this suit."

This was understood to be an offer on the part of the company to defend Langdon only. Martain, feeling the necessity of having counsel defend him, the company having declined to defend him, employed the company's attorney having in charge the defense of Langdon, agreeing to pay him therefor one hundred dollars.

That action proceeded to trial, resulting in a verdict and judgment rendered on March 31, 1930, in favor of Miss Larson and against Martain only, awarding her recovery in the sum of five hundred dollars and the costs of the action. Thereafter, there was an execution issued upon that judgment against Martain and returned by the sheriff wholly unsatisfied. Thereafter, on July 10, 1930, Martain duly assigned to Miss Larson all of his rights as beneficiary under the policy and arising in that behalf by reason of the judgment rendered against him and his payment of one hundred dollars as attorney's fees in the defense of that action. Soon thereafter, Miss Larson commenced this action in the superior court for King county against the company.

The principal contention here made in behalf of the company is that the trial court erred in refusing to take the case from the consideration of the jury and decide, as a matter of law, that no recovery can be awarded under the policy because of total failure of proof of the giving of written notice of the accident, as prescribed by the last above quoted paragraph of the policy.

We think the answer to this contention is that the evidence was such that it was for the jury to determine as to whether or not the accident was of such serious nature as to give Martain or Langdon reasonable cause to anticipate that it would likely result in a claim of damages by Miss Larson, at any time prior to Novem-

ber 5, 1929, when her counsel, by the letter of that date, advised Langdon of her claim for damages:

It seems to us that our decision in *McKenna v. International Indemnity Co.,* 125 Wash. 28, 215 Pac. 66, is decisive to this effect. The accident there in question occurred in a manner very similar to the one here in question. In that action, it appeared that the injured person was knocked clear down on the pavement, and, upon immediately arising, said he was not hurt and then walked away, apparently uninjured. In this action, it appears that Miss Larson was not knocked clear down on the pavement, that she immediately recovered herself, and suddenly ran away, without exhibiting the slightest evidence of being hurt. In that case, it was held, in harmony with a number of well-considered decisions, in substance, that it was for the jury to determine as to whether or not the accident was of such serious nature as to call for giving notice thereof to the insurance company, in compliance with a policy condition substantially the same as the one here involved. The trial judge fully and fairly instructed the jury in harmony with this view of the law, as we shall presently notice.

As to the question of the necessity of giving notice of the accident to the company after November 5, 1929, the date of the letter advising Langdon of Miss Larson's claim for damages, it seems to us that it might well be decided, as a matter of law, that the notice requirement of the policy was sufficiently complied with by the prompt submission of that letter to the company, in view of Langdon's being then or very soon thereafter informed by the company's representatives that it disclaimed all liability because of the delay in giving it notice of the accident. However, that question of waiver was by the court submitted to the jury.

Contention is made in behalf of the company that error was committed to its prejudice in giving instructions to the jury touching the question of waiver of notice of the accident by the company. Such error, it is argued, is to be found in the portion of the following instructions which we have italicized:

"(6) . . . If you find from a preponderance of the evidence that notice in writing as provided by the policy was not given the defendant, immediately following the happening of the accident in question, then your verdict will be for the defendant, *unless you find there was a waiver of notice as hereinafter referred to in these instructions.*

"(7) The word 'accident' referred to in the policy, of which immediate written notice is required to be made, does not mean every accident or mishap, casualty or misadventure occurring without bodily injury. If no apparent injury occurred from the mishap and there was no reasonable ground for believing at the time that bodily injury would result from the accident, there was no duty upon the assured to notify the insurer. If the accident would not in an ordinary mind induce a reasonable belief that it might result in bodily injury there was no obligation on the part of the assured to notify the insurance company. The duty of the assured under such circumstances with respect to giving notice is performed if he gives notice within a reasonable time after he became aware in the exercise of ordinary care of the serious aspect of the injury suggestive of a possible claim for damages under the policy.

"(8) If you find . . . and you further find that the assured, in the exercise of ordinary care, did not become aware of the serious aspect of the injury to Gerda Larson until a letter was received from her attorney and the summons and complaint in her action against the assured was received, and that within a reasonable time thereafter said papers were taken in person to the office of the insurance company in Seattle, Washington, and a verbal report of the accident made and that the insurance company denied liability

solely because it claimed to have received no notice either written or verbal of the accident prior thereto, then you are instructed that such conduct on the part of the insurance company would amount to a waiver of the requirement in the policy that the report of the accident be made in writing and the plaintiff would be entitled to recover in this case.''

This contention seems to rest upon the theory that the portion of these instructions relating to waiver referred to waiver of notice of accident by the company prior to November 5, 1929, the date of the letter advising Langdon of Miss Larson's claim of damages. We think that, when these instructions are read as a whole, they do not evidence an intent on the part of the trial judge to make them applicable to any question of waiver prior to that date, but evidence an intention on the part of the trial judge to make them, as referring to waiver, applicable to what occurred after that date. It is manifest that there was no question of waiver prior to that date. As to that period, there was only the question of the necessity of notice of the accident to the company. We think there was no error in these instructions touching the question of waiver prejudicial to the company.

We conclude that the judgment must be affirmed. It is so ordered.

TOLMAN, C. J., MITCHELL, BEELER, and HERMAN, JJ., concur.